En el Tribunal Supremo de Puerto Rico

| COMITE DE VECINOS PRO-MEJORAMIENTO , INC.<br>    Peticionaria<br><br>    V.<br><br>JUNTA DE PLANIFICACION DE PUERTO RICO<br><br>    Recurrida | Certiorari<br><br>99TSPR28 |

Número del Caso: CC-97-0089

Abogados de la Parte Peticionaria: Lic. Maretsa Rodríguez Portela

Abogados de la Parte Recurrida: Lic. César E. Mercado Vega

Abogados de la Parte Interventora:

Tribunal de Instancia: JUNTA DE PLANIFICACION

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones: VII CAROLINA, FAJARDO

Juez Ponente: No tiene

Panel integrado por Juez Arbona Lago, Pres., y los Jueces Negroni Cintrón y Salas Soler

Fecha: 3/19/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comité Vecinos
Pro-Mejoramiento Inc.

    Peticionario-Recurrente

      v.                  CC-97-89       Certiorari

Junta de Planificación de P.R.

    Apelada-Recurrida

PER CURIAM

San Juan, Puerto Rico, a 19 de marzo de 1999.

I

El 25 de enero de 1994 la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) autorizó[1] a la Betteroads Asphalt Corporation[2], en adelante Betteroads, la instalación por espacio de tres (3) años[3], de una planta dosificadora de asfalto en el kilómetro 2 de la Carretera PR- 765

_____

[1] Caso Núm. 93-46-B-932-KPA.

[2] Betteroads es una compañía que se dedica a instalar equipo portátil dosificador de hormigón asfáltico en aquellos sectores de Puerto Rico donde le contratan para pavimentar con asfalto.

[3] Véase un escrito titulado "Comparecencia Especial" presentado el 21 de febrero de 1996 por la Betteroads Asphalt Corporation ante el Tribunal de Primera Instancia, *Exhibit* VII del Apéndice, pág. 34.

del Barrio Borinquen de Caguas. Esta área está clasificada R-O, no está zonificada y está fuera del área de expansión urbana. Betteroads obtuvo previamente una declaración favorable de impacto ambiental conforme al Artículo 4(c) de la Ley Núm. 9 de 18 de junio de 1970, conocida como la Ley de Política Pública Ambiental, 12 L.P.R.A. sec. 1124. Al momento de conceder la autorización a Betteroads no se le requirió presentar una consulta de ubicación ante la Junta de Planificación (en adelante la Junta) a pesar de lo dispuesto por la Subsección 3.03 (b) del Reglamento para Procedimientos Adjudicativos de la Junta, 23 R.P.R. sec. 650.227.

Así las cosas, el 4 de diciembre de 1995, la parte peticionaria, el Comité de Vecinos Pro Mejoramiento Comunal del Barrio Borinquen, presentó una moción en auxilio de jurisdicción ante la Junta para que se dejara sin efecto la Resolución JPD-11 en su cuarta y sexta extensión.[4] Anteriormente, la parte peticionaria había radicado una querella administrativa ante A.R.P.E. en oposición a la aprobación del anteproyecto de construcción de la planta dosificadora de asfalto caliente en un área no zonificada, aduciendo que su uso sólo es permitido en zonas industriales.[5] Alegó, además, que A.R.P.E no

_____

[4] A través de esta Resolución y de sus extensiones cuarta y sexta, la Junta le delegó a A.R.P.E. la "consideración y resolución de casos o determinaciones que requieran acción en la 'fase operacional´ que no requieran implantar o definir la política pública por haber sido ésta ya establecida." Específicamente, le delegó la consideración y resolución de propuestos usos temporeros de terrenos y estructuras en áreas no zonificadas. Véase el Apéndice de la Petición de *Certiorari*, *Exhibits* 1 y 2, págs. 1-4.

[5] Al momento de expedirse el mandamiento de *certiorari* la consideración de ese asunto estaba pendiente ante la Junta de Apelaciones sobre Construcciones y Lotificaciones. Sin embargo, a través del alegato de la parte recurrente nos enteramos de que la Betteroads Asphalt Corp. retiró su solicitud de un permiso de construcción mediante una solicitud de desistimiento. Ante la posibilidad de que pudiera esgrimirse algún planteamiento sobre la academicidad del recurso ante nos, la parte recurrente se opone. Fundamentalmente, aduce como razones las siguientes: "(1) porque las resoluciones que se impugnan están vigentes y la Administración de Reglamentos y Permisos

celebró ningún tipo de vista, ni consultó a los vecinos del sector al aprobar dicho proyecto. Asimismo, señaló que era necesario –previo a la instalación de las facilidades necesarias para este tipo de trabajo– se realizaran vistas públicas mediante consulta de ubicación.

El 15 de diciembre de 1995, la Junta declaró no ha lugar la moción en auxilio de jurisdicción. Inconforme con tal determinación, la parte peticionaria presentó un recurso de revisión ante el Tribunal de Primera Instancia, Sala de San Juan, el cual conforme a la Ley Núm. 248 de 25 de diciembre de 1995, refirió la consideración del mismo al Tribunal de Circuito de Apelaciones.

Mediante Resolución de 31 de diciembre de 1996, archivada en autos copia de su notificación el 27 de enero de 1997, el foro apelativo denegó expedir el auto solicitado por entender que la resolución administrativa era esencialmente correcta.

Insatisfecha con tal determinación la parte peticionaria recurre ante nos alegando la comisión de los siguientes errores:

> "(1) Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la delegación hecha por la Administración de Reglamentos y Permisos[6] [sic] mediante la Resolución JPD-11-94-006 es válida.
>
> (2) Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que los actos que realice la Administración de Reglamentos y Permisos vía dicha Resolución no constituirán un cambio de zonificación.
>
> (3) Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la sección 99.07 del Reglamento de Zonificación vigente contempla el uso de una planta de asfalto."

---

actúa a base de ellas autorizando hormigoneras y plantas de asfalto en áreas no zonificadas; (2) porque la reglamentación adjudicativa de la Administración de Reglamentos y Permisos permite la reapertura de casos; (3) porque el desistimiento fue sin perjuicio y; (4) porque la referida planta de asfalto no ha sido removida." Alegato de la parte recurrente de 23 de julio de 1997, pág. 3.

[6] La delegación fue de la Junta a A.R.P.E.

Examinada la petición de *certiorari* expedimos mandamiento mediante Resolución de 1ro de abril de 1997, archivada en autos copia de su notificación el 2 de abril de 1997. Con el beneficio de la comparecencia de las partes estamos en posición de resolver.

II

Durante el año 1975 la Asamblea Legislativa de Puerto Rico reorganizó el sistema de planificación de Puerto Rico. A esos efectos, aprobó la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. secs. 62-63 y la Ley Núm. 76 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. secs. 71-72. La primera autorizó una nueva ley orgánica para la Junta y la segunda creó a A.R.P.E.

Entre los objetivos que enmarcan la aprobación de la nueva Ley Orgánica de la Junta está el siguiente:

> "[...] guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de la población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente." Artículo 4 de la Ley Núm. 75, *supra,* 23 L.P.R.A. sec. 62 c.

El Artículo 11 de la Ley Núm. 75, *supra*, enumera las funciones y facultades de la Junta. Entre ellas, incluye el preparar y adoptar planes de usos de terrenos[7] y establecer la política pública que conduzca al establecimiento de un plan de desarrollo integral de Puerto Rico[8]. Así también, reconoce la facultad de la Junta de delegar en A.R.P.E. algunos de sus

---

[7] 23 L.P.R.A. sec. 62 j (13).

deberes y responsabilidades.[9] Entre éstos incluye los casos que requieren acción en su fase operacional[10]; las decisiones que no requieran esbozar o delinear definiciones de política pública por haber sido previamente establecidas por la Junta; los casos donde A.R.P.E. pueda actuar con mayor eficacia y rapidez; y el que la delegación no le cause un entorpecimiento indebido a A.R.P.E.[11]

Así también, la Ley Núm. 75,*supra*, faculta a la Junta a delegar en A.R.P.E. "[l]a adopción de enmiendas a los mapas de zonificación en áreas previamente zonificadas y la consideración y resolución de consultas de ubicación y de proyectos públicos, salvo en aquellos casos en que la Junta determine delegar tales funciones a las Comisiones Locales o Regionales de Planificación u otros organismos."[12]

Cónsono con las disposiciones que preceden, debemos evaluar lo dispuesto en el Artículo 35 de la Ley Núm. 75, *supra*.[13] Este dispone, en lo pertinente, en cuanto a la delegación de funciones, lo siguiente:

> "La Junta podrá delegar a la Administración de Reglamentos y Permisos todas aquellas funciones que determine, conforme a lo dispuesto en la sec. 62 j (19) de este título, sobre la adopción de enmiendas

---

[8] 23 L.P.R.A. sec. 62 j (15).

[9] 23 L.P:R.A. sec. 62 j (19).

[10] El Artículo 3 (f) de la Ley Núm. 75, *supra*, 23 L.P.R.A.. sec. 62 (b) (f) y el Artículo 3 de la Ley Núm. 76, *supra*, 23 L.P:R.A. sec. 71 (b) (1) definen el término fase operacional como "aquella parte de la función de revisión de proyectos que comprende, entre otros, el aplicar y velar por el cumplimiento de las leyes y reglamentos promulgados para el uso, desarrollo y subdivisión de terrenos así como para la construcción de edificios y estructuras."

[11] Artículo 11, inciso 19, de la Ley Núm. 75, *supra*, 23 L.P.R.A. sec. 62  j (19) (a).

[12] 23 L.P.R.A. sec. 62 j (19) (b).

[13] 23 L.P.R.A. sec. 63 g.

a los mapas de zonificación en áreas previamente zonificadas, así como la consideración y resolución de consultas de ubicación y proyectos públicos." [...] Art. 35 de la Ley Núm. 75, *supra*. (Enfasis nuestro).

La Junta es, pues, la agencia gubernamental encargada, fundamentalmente, de adoptar la política pública en todo aquello relacionado con el desarrollo integral de Puerto Rico.

Ley Núm. 75, *supra*, requiere que toda delegación de la Junta a A.R.P.E. sea hecha mediante resolución. Esta debe contener las guías, hechos, condiciones y aún cualquier otra información que tenga el efecto de guiar la acción delegada. No obstante, para que la delegación sea efectiva, se requiere la aprobación del Gobernador o del funcionario a quien éste le delegue tal autoridad.[14]

En virtud de esa facultad delegada, el 15 de enero de 1982, la Junta adoptó la Resolución JPD-11 titulada "Delegando Funciones en la Administración de Reglamentos y Permisos". Esta tenía el propósito de facilitar y acelerar los trámites establecidos para la consideración de proyectos en beneficio de la ciudadanía en general. Ese mismo año el Gobernador la aprobó.

Posteriormente, y con el objetivo de ampliar las delegaciones originalmente concedídales, la Resolución JPD-11 sufrió varias extensiones. Específicamente, a través de la cuarta extensión de 6 de agosto de 1991, la Junta le delegó a A.R.P.E. la consideración y resolución de propuestos usos temporeros de terrenos y estructuras en áreas no zonificadas que requerían consulta de ubicación ante la Junta.[15] El propósito era permitir actividades de corta duración, entre las que se incluían los carnavales, las verbenas, las fiestas patronales,

---

[14] 23 L.P.R.A. sec. 62 j (19) (b).
[15] Ello de acuerdo con los términos de la Subsección 3.03 (b) del Reglamento sobre las Decisiones Adjudicativas de la Junta, 23 R.P.R. 650.228.

las actividades religiosas, las casetas de construcción u hormigoneras. A esos efectos, se autorizaba, el establecimiento de estructuras temporeras y removibles.

Tiempo después, mediante la Resolución JPD-11-94-006 de 7 de abril de 1994, la Junta amplió sus delegaciones a A.R.P.E. Esta vez le autorizó la consideración de usos temporeros adicionales. Entre ellos, el de las plantas dosificadoras de asfalto en Distritos R-0, en áreas no zonificadas y en áreas rurales zonificadas y las actividades de corta duración tales como carnavales, verbenas, fiestas patronales, actividades religiosas, casetas de construcción y plantas dosificadoras de hormigón u hormigoneras en Distritos R-0 y en área rural zonificada.[16] Mediante dicha Resolución, se dispuso que en casos de las plantas dosificadoras de hormigón y asfalto se debía cumplir con lo dispuesto en la Ley Núm. 9 de 18 de junio de 1970, según enmendada, *supra*. Finalmente, estableció como término máximo de operación de dichas actividades industriales, un período de dos (2) años o lo que dispusiera el contrato, lo que fuere menor.

La Junta, a la luz de las disposiciones estatutarias de la Ley Núm. 75, *supra*, y de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, adoptó el 26 de octubre de 1989 el Reglamento para Procedimientos Adjudicativos entrando en vigor el 23 de noviembre de 1989, *supra*. El propósito de este reglamento era

---

[16] La Sección 99.07 del Reglamento de Zonificación, Núm. 4 hace lo propio, en cuanto a ello dispone lo siguiente:

> "Permisos de uso temporeros - La Administración de Reglamentos y Permisos podrá conceder permisos de usos temporeros para la erección de estructuras para que alberguen actividades de corta duración tales como, pero sin limitarse a éstos: carnavales, verbenas, fiestas patronales, actividades religiosas, casetas de construcción u oficinas para la venta de un proyecto de vivienda." 23 R.P.R. sec. 650.1746 (6).

establecer –a la luz de las exigencias de la Ley núm. 170, *supra*,– las normas mínimas que guiarían los procedimientos adjudicativos en la Junta.[17] Siendo de aplicación a procedimientos tales como "las consultas, órdenes provisionales, órdenes de hacer y no hacer y de cese y desestimiento [sic] y otras adjudicaciones que formule la Junta."[18]

En relación con la consulta de ubicación el Reglamento la define, en lo que nos es pertinente, como:

> "[el] trámite mediante el cual la Junta de Planificación evalúa y decide según estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. En áreas no zonificadas incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector."[...][19] (Enfasis nuestro).

A renglón seguido, la Sección 3.03 del citado Reglamento enumera los proyectos que requieren consulta. Provee para aquéllos comprendidos en áreas zonificadas.[20] Hace lo propio con las áreas no zonificadas.[21]

En cuanto a estas últimas, el reglamento requiere consulta de ubicación en todos aquellos proyectos que por su naturaleza o la magnitud del mismo, tengan un impacto significativo en el ambiente físico, económico y aún social del sector en el cual habrá de establecerse; produciendo como efecto el que los patrones de conducta en el lugar en cuestión, sufran cambios tales como aumento o disminución de la población; cambios en las actividades de

---

[17] Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Sección 1.04; 23 R.P.R. sec. 650.221.

[18] Id.

[19] Id. Sección 2.00 (6); 23 R.P.R. 650.225 (6).

[20] Id., Sección 3.03 (1); 23 R.P.R. sec. 650.228 (1).

producción, consumo y servicios; cambios en el desarrollo físico del sector, incluyendo el grado de contaminación del ambiente.[22]

Aunque el Reglamento menciona que están exentos los proyectos que hayan sido delegados a A.R.P.E. mediante Resolución, ilustrativo nos resulta que éste contiene una Tabla en la que se incluyen algunos de los proyectos a establecerse en áreas no zonificadas y que tienen que ser considerados, en primera instancia, por la Junta. Los proyectos se dividen en residenciales, comerciales, industriales, institucionales, hoteleros, facilidades vacacionales recreativas y otros tipos de proyectos. Dentro de los industriales se encuentran los:

> "proyectos de 15,000 pies cuadrados o más de área bruta de piso, incluyendo proyectos agropecuarios, tales como: crianza de cerdos, conejos y otros similares, a excepción de las granjas avícolas, las cuales serán aquéllas de más de 30,000 pies cuadrados de área bruta de piso. Incluye, además toda actividad industrial que produzca en forma significativa humo, polvo, gases, ruidos, vibraciones, riesgo de fuego, o explosión u otras condiciones que puedan resultar perjudiciales a las áreas adyacentes. Entre éstas están las plantas dosificadoras de hormigón y de asfalto, macelos, graveros. (Enfasis nuestro). Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Tabla Ilustrativa de los Proyectos en áreas no zonificadas que requieren consulta en la Junta de Planificación. 23 R.P.R. sec. 650.228 (2).

Teniendo lo anterior de trasfondo, y antes de aplicar los preceptos legales citados a los hechos del caso de autos, conviene reiterar que en nuestra jurisdicción existe una presunción de regularidad y corrección que acompaña los procedimientos y las decisiones de las agencias administrativas;[23] que la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones, *Id*; que

---

[21] Id., Sección 3.03 (2); 23 R.P.R. sec. 650.228 (2).

[22] Id.

[23] *Henríquez Soto v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987).

la interpretación de una ley le corresponde en primer lugar a las agencias encargadas de su administración; y que son ellas, después de todo, las que en mejor posición están a la hora de armonizar los propósitos de las mismas, con las situaciones de día a día. En atención a ello, hemos sido muy deferentes a la hora de evaluar sus interpretaciones. Interviniendo, sólo, cuando las actuaciones o determinaciones sean arbitrarias, ilegales o tan irrazonables que su actuación se hubiese constituido en un claro abuso de discreción. *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

Aplicando tales principios de deferencia, concluimos que en el caso de autos, la Junta excedió sus facultades al delegarle a A.R.P.E. la consideración y concesión de permisos para la ubicación de plantas dosificadoras de asfalto en áreas no zonificadas, como parte de los usos temporeros previamente delegados. Veamos.

En primer lugar, de una lectura de las disposiciones legales relacionadas con la delegación de funciones de la Junta a A.R.P.E., se desprende que el legislador no tuvo la intención de autorizar a la Junta a delegar en A.R.P.E. la toma de decisiones relacionadas con las áreas no zonificadas. La Ley Núm. 75, *supra*, al enumerar las instancias de delegación de una agencia a otra omite hacer referencia a la delegación de funciones en áreas no zonificadas. A través del estatuto el legislador autoriza la delegación de la consideración de proyectos y enmiendas a los mapas de zonificación sólo en aquellas áreas que han sido previamente zonificadas.

Siendo esto así la Junta actuó *ultra vires* y más allá del poder delegado.[24]

---

[24] Aunque hemos reconocido que la Asamblea Legislativa puede delegar en las agencias administrativas los poderes tanto legislativos como judiciales a través de normas amplias y

A la luz de lo discutido parece existir cierta inconsistencia entre las disposiciones reglamentarias previamente citadas. De un lado, el Reglamento para Procedimientos Adjudicativos es claro al incluir las plantas dosificadoras de asfalto entre los proyectos que requieren consulta de ubicación ante la Junta. Por el otro, el Reglamento de Zonificación Núm. 4 le permite a A.R.P.E. conceder permisos de usos temporeros para construir estructuras que alberguen actividades de corta duración entre las que menciona las verbenas, los carnavales, las fiestas patronales, actividades religiosas, y casetas de construcción u oficinas para la venta de vivienda. Así también, y tal cual discutido previamente, la Junta autorizó a A.R.P.E. –mediante las extensiones cuarta y sexta – a considerar entre los propuestos usos temporeros, las plantas dosificadoras de asfalto.

Entendemos que fue a la luz de lo dispuesto en el Reglamento de Zonificación Núm. 4 que la Junta entendió que podía delegarle a A.R.P.E. la consideración de las plantas dosificadoras de asfalto. Erró.

El Tribunal de Circuito de Apelaciones[25] concluyó que los ejemplos contenidos en la Sección 99.07 del Reglamento de Zonificación Núm. 4 son ilustrativos y no taxativos, siendo en consecuencia *numerus apertus* y no *numerus clausus*. Tiene razón. Sin embargo, debemos señalar que lo que la Junta delega en el Reglamento de Zonificación Núm. 4 –específicamente en su Sección 99.07– no es la consideración de propuestos usos temporeros sino

---

generales que guíen tal delegación, *López Salas v. Junta de Planificación,* 80 D.P.R. 646 (1958); *Hilton Hotels International v. Junta de Salario Mínino*, 74 D.P.R. 670 (1953); *Luce & Co. v. Junta de Salario Mínimo,* 62 D.P.R. 452 (1944); también hemos dicho que cualquier actuación que transgreda el ámbito de acción delegado será nulo. *P.S.P. v. Comisión Estatal de Elecciones*, 110 D.P.R. 400 (1980); *Infante v. Tribunal Examinador de Médicos*, 84 D.P.R. 308 (1961).

[25] En su Resolución de 31 de diciembre de 1996, notificada el 27 de enero de 1997.

la construcción de estructuras que alberguen ese tipo de proyectos. Razonamos así no sólo por el lenguaje de la sección sino por que el establecimiento de una planta dosificadora de asfalto en un área no zonificada por un período de tiempo ininterrumpido de tres (3) años, no es un uso temporero. Si comparamos la instalación de una planta dosificadora de asfalto con las demás actividades que detalla la JPD-11-94-006, veremos que la primera se caracteriza por ser un proyecto de carácter industrial cuyos efectos sobre el ambiente y la infraestructura pueden ser más significativos y serios que los provocados por unas fiestas patronales, verbenas u otro tipo de actividad análoga. Así también, resulta significativo el factor tiempo. Tal como admitió Betteroads, en su "Comparecencia Especial" ante el Tribunal de Primera Instancia, la autorización concedida por A.R.P.E. fue por espacio de tres (3) años. Ello contrasta significativamente con el período de duración de las demás actividades que enumeró la Junta al delegarle a A.R.P.E. la autoridad de conceder permisos de uso.

Asimismo, conviene indicar que aún cuando pudiera alegarse que tres (3) años es un período breve de tiempo, y ciertamente no lo es, la autorización concedida por A.R.P.E. rebasó los límites de la facultad delegada. La propia Resolución JPD-11-94-006 expresamente dispone que el término de operación de tales plantas no podía ser mayor de dos (2) años o lo que se dispusiera en el contrato, lo que fuere menor.

En síntesis, por disposición expresa del Reglamento para Procedimientos Adjudicativos, no es delegable a A.R.P.E. la consideración de propuestos usos temporeros en los casos de plantas dosificadoras de asfalto. Es necesario, tal como dispone el reglamento en cuestión, que antes de autorizar el establecimiento de una planta dosificadora de asfalto en un área no zonificada se efectúe el trámite de consulta de ubicación

correspondiente ante la Junta. El hecho de que la planta consista de una máquina removible no significa que su efecto no deba considerarse, a los fines de una consulta de ubicación, cuando se instala por un período de tres años. Sólo después de realizarse tan delicado análisis deberá autorizarse el establecimiento de una planta dosificadora de asfalto. Dado que era necesario recurrir a la Junta mediante el procedimiento de consulta de ubicación y que no es válida la delegación hecha por la Junta, no es necesario discutir, en esta etapa, si la actuación de A.R.P.E., a la luz de la delegación contenida en la Resolución JPD-11-94-006, implica un cambio de zonificación.

Finalmente, aplicando la doctrina de derecho administrativo que postula que una vez una agencia ha promulgado un reglamento, en aras de limitar su discreción, viene obligada a cumplir con sus disposiciones y que no queda a su arbitrio reconocer o no los derechos allí contenidos, *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Díaz de Llovet v. Oficina del Gobernador*, 112 D.P.R. 747 (1982); *García Troncoso v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978); *Hernández García v. J.R.T.*, 94 D.P.R. 22 (1967), procede revocar la resolución recurrida.

Se devuelve el caso a la Administración de Reglamentos y Permisos (A.R.P.E.) para la continuación de los procedimientos a tenor con lo aquí dispuesto.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Comité Vecinos
Pro-Mejoramiento Inc.

    Peticionario-Recurrente

       v.                    CC-97-89         Certiorari

Junta de Planificación de P.R.

    Apelada-Recurrida


SENTENCIA


San Juan, Puerto Rico, a 19 de marzo de 1999.


Por los fundamentos expuestos en la opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia revocando la Resolución de 31 de diciembre de 1996, dictada por el Tribunal de Circuito de Apelaciones.

Se devuelve el caso a la Administración de Reglamentos y Permisos (A.R.P.E.) para la continuación de los procedimientos a tenor con lo aquí dispuesto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente con opinión escrita.


                    Isabel Llompart Zeno
              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Comité Vecinos
Pro-Mejoramiento, Inc.

    Peticionario-Recurrente

       v.                  CC-97-89      Certiorari

Junta de Planificación de P.R.

    Apelada-Recurrida


OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 19 de marzo de 1999

En el presente caso, este Tribunal resuelve que la Junta no puede delegar a A.R.P.E. las funciones de considerar los permisos de usos temporeros de plantas dosificadoras de asfalto en áreas no zonificadas por _dos_ razones: (1) porque la ley habilitadora de la Junta no la autoriza a delegar a A.R.P.E. la "...toma de decisiones relacionadas a las áreas no zonificadas..."[26]; y (2) porque "...parece existir cierta inconsistencia entre las disposiciones reglamentarias..."[27] aplicables y la resolución de la Junta en controversia por cuanto mediante reglamento la Junta se reservó la facultad de

---

[26] Opinión Per Curiam, pág. 12.
[27] Ibid, pág. 13.

actuar sobre el asunto en cuestión y por resolución delegó tal asunto a A.R.P.E..

Sorprende que, a pesar de la claridad del texto de la ley orgánica de la Junta y de sus reglamentos, este Tribunal llegue a tan errónea conclusión. Veamos.


I

Como es sabido, para el año 1975 se reestructuró el sistema de planificación y desarrollo integral del país mediante la promulgación de dos leyes: la Ley Núm. 75 de 24 de junio de 1975[28], nueva ley orgánica de la Junta, y la Ley Núm. 76 de igual día, mes y año[29], que creó a A.R.P.E.. Bajo el nuevo esquema administrativo, la Junta es la agencia encargada de integrar y coordinar la formulación e implantación de la política pública sobre el desarrollo físico, económico y social de Puerto Rico; mientras que A.R.P.E. vendría a ser el órgano gubernamental responsable de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. Para esto, se transfirió a A.R.P.E. las funciones operacionales[30] que hasta ese momento desempeñaba la Junta respecto a la evaluación y concesión de permisos. Junta de Planificación v. J.A.C.L., 109 D.P.R. 210, 214 (1979).

De conformidad con el nuevo diseño administrativo, el Artículo 11(19) de la antes mencionada Ley 75 le concedió a la Junta la facultad de delegar a A.R.P.E. aquellos deberes y responsabilidades que por ley o por sus reglamentos le pertenecen a la Junta, en los siguientes casos:

"(a) Casos o determinaciones en los que medien cualesquiera de las siguientes condiciones:

---

[28]    23 L.P.R.A. sec. 62 et seq..
[29]    23 L.P.R.A. sec. 71 et seq..
[30]    La ley orgánica de la Junta define la frase "fase operacional" como "aquella parte de la función de revisión de proyectos que comprende, entre otros, el aplicar y velar por el cumplimiento de las leyes y reglamentos promulgados para el uso, desarrollo y subdivisión de terrenos, así como para la construcción de edificios y estructuras". 23 L.P.R.A. sec. 62b(f) y 23 L.P.R.A. sec. 71b(l).

(1) que requieran acción en la 'fase operacional', según se define en este Capítulo;

(2) <u>que la estructuración o decisión a adoptarse no requiera implantar una política general o una definición de política pública, por haber sido éstas ya establecidas o adoptadas por la Junta;</u>

(3) <u>que la Junta determine, a la luz de la función de dicha Administración que puede resolverse los casos o adoptarse las determinaciones con más celeridad o eficiencia por la Administración;</u> y

(4) que la delegación de éstos en la Administración no cause entorpecimiento indebido a dicha agencia par cumplir con las funciones que la ley impone.

(b) la adopción de enmiendas a los mapas de zonificación en áreas previamente zonificadas <u>y la consideración y resolución de consultas de ubicación</u> y de proyectos públicos, salvo en aquellos casos en que la Junta determine delegar tales funciones a las Comisiones Locales o Regionales de Planificación u otros organismos." (Enfasis suplido). 23 L.P.R.A. sec. 62j(19).

Más adelante en ese mismo articulado, la Ley preceptúa que "...[l]a Junta podrá establecer criterios o normas que le permitan revisar tales normas y delegaciones periódicamente. Hechas estas delegaciones, las disposiciones de este Capítulo relativas a los asuntos delegados serán aplicables a la [A.R.P.E.]. <u>Esta sección no limitará otras delegaciones que la Junta pudiera realizar al amparo de las disposiciones de este Capítulo.</u> ...". (Enfasis suplido).[31]

Como requisito para poder efectuar las delegaciones, la ley habilitadora de la Junta exige que ésta adopte una resolución en la cual consigne "...las guías, hechos y condiciones y toda otra información necesaria para que la acción delegada sea lo suficientemente precisa...".[32] Las resoluciones que a esos efectos adopte la Junta deben ser aprobadas por el Gobernador para poder ser efectivas.[33]

Por su parte, la ley orgánica de A.R.P.E. dispone, como parte de los deberes, funciones y facultades que tendrá dicho organismo,

---

[31]    23 L.P.R.A. sec. 63(g).
[32]    23 L.P.R.A. sec. 62j(19).

el "[e]jercer las funciones, deberes y responsabilidades que delegue en la Administración la Junta de Planificación, conforme a la autorización y condiciones consignadas mediante resolución de la Junta, reglamento o en las secs. 62 a 63j de este título".[34]

II

En el caso ante nuestra consideración, el 15 de enero de 1982 la Junta adoptó la Resolución JPD-11, intitulada "Delegando Funciones en la Administración de Reglamentos y Permisos", con el objetivo de facilitar y acelerar los trámites establecidos para la consideración de proyectos en beneficio de la ciudadanía en general y permitiendo a la Junta canalizar sus esfuerzos hacia funciones menos operacionales y de mayor relación con la orientación, coordinación e integración de la política pública sobre el desarrollo integral del país. Posteriormente, fueron aprobadas otras seis extensiones a la Resolución JPD-11 para incluir otras delegaciones que cubren asuntos o casos de naturaleza operacional que merecen ser atendidas por A.R.P.E.. Tanto la mencionada resolución, como sus extensiones, contaron con la aprobación del Gobernador.

Mediante la Cuarta Extensión, adoptada el 6 de agosto de 1991, la Junta delegó en A.R.P.E. la consideración y resolución de propuestos <u>usos temporeros</u> de terrenos y estructuras en áreas no zonificadas por la Junta que, de tratarse de cambios permanentes en zonificación, hubiesen requerido ser sometidos al proceso de consulta de ubicación, conforme lo dispone el Reglamento para Procedimientos Adjudicativos de la Junta.[35] Asimismo, la Cuarta

---

[33] Ibid.

[34] 23 L.P.R.A. sec. 71d(q).

[35] Este reglamento indica que los proyectos en áreas no zonificadas que requieren pasar por el proceso de consulta de ubicación ante la Junta son:

Extensión de la Resolución JPD-11 delega a A.R.P.E. la facultad de considerar proyectos sobre actividades de corta duración tales como, pero sin limitarse a, hormigoneras. Se dispuso además que sólo se podrían autorizar estructuras temporeras y removibles, pero no obras permanentes.

El 7 de julio de 1994, la Junta adoptó otra Resolución por medio de la cual ampliaba las facultades delegadas a A.R.P.E. para que considerara los siguientes usos temporeros:

> "1. Plantas dosificadoras de asfalto o asfalteras en Distritos R-0, en área no zonificada y en área rural zonificada.
> 2. Actividades de corta duración tales como carnavales, verbenas, fiestas patronales, actividades religiosas, hormigón u hormigoneras en Distrito R-0 y en área rural zonificada." (Enfasis suplido).

Así también se dispuso en la referida Resolución que, para la autorización de plantas dosificadoras de hormigón y asfalto, se debía cumplir con la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970[36], y que el término de operación de dichas actividades industriales no podría ser mayor de dos años o el término que estableciera el contrato, lo que fuera menor. Del mismo modo, se expresó que para todos los usos mencionados anteriormente

---

"...[aquellos] cuya naturaleza y magnitud tienen un impacto significativo en el ámbito físico, económico y social del sector en que ha de ubicarse como resultado de lo cual puede esperarse un cambio en los patrones de conducta general de ese sector (aumento o disminución poblacional, cambio en las actividades de producción, consumo y servicios, cambios en el desarrollo físico del sector, incluyendo el grado de contaminación del ambiente). Incluye, además, toda mejora pública, excepto aquéllas de las cuales están exentos los organismos gubernamentales, incluyendo los municipios que hayan obtenido su autonomía municipal a tenor con la Ley Núm. 81 del 30 de agosto de 1991, según enmendada y las delegadas en la A.R.P.E. mediante resolución expresa de la Junta." 23 R.P.R. sec. 650.228(2).

Cabe señalar que entre los proyectos que deben ser considerados en primera instancia por la Junta están los proyectos industriales de plantas dosificadoras de hormigón y de asfalto que tengan un impacto significativo como el descrito en el Reglamento.
[36] 12 L.P.R.A. sec. 1124.

se podrían autorizar estructuras con carácter temporero y removible, pero no obras permanentes.

A tenor con las disposiciones del Artículo 11(19) de la ley orgánica de la Junta, no hay duda de que la acción delegada, en controversia en el presente caso -consideración y concesión de permisos de usos temporeros para instalar plantas dosificadoras de asfalto en áreas no zonificadas- cae dentro de aquellos casos o determinaciones que pueden ser delgados a A.R.P.E.. En primer lugar, la decisión a adoptarse por A.R.P.E. no requiere de la implantación de una política general o una definición de política pública por haber sido éstas ya establecidas por la Junta. En la Resolución JPD-11, así como en sus extensiones, la Junta estableció las condiciones, guías, hechos e información necesaria a considerar para que la acción delegada fuera lo suficientemente precisa, incluyendo de este modo la política pública en cuanto al asunto en cuestión.

De otra parte, por mandato expreso de su ley orgánica, si la Junta determina que A.R.P.E., a la luz de las funciones de esta agencia, puede resolver los casos o adoptar determinaciones con más celeridad o eficiencia que ella, puede delegar en A.R.P.E. aquellos deberes y responsabilidades que le corresponden a ella, por ley o reglamento.

Resulta, a nuestro entender, forzosa la inferencia o conclusión que la Junta, organismo administrativo con la experiencia y el peritaje en la materia, pasó juicio sobre todos los aspectos que se tienen que tomar en consideración antes de delegar a A.R.P.E. la evaluación y aprobación de usos temporeros en áreas no zonificadas y que, luego de ponderar los distintos elementos, entendió que la adopción de la Resolución en controversia, y sus extensiones agilizaba, los procedimientos y facilitaba en todo lo posible los trámites de proyectos, claro está, estableciendo las salvaguardas

correspondientes. <u>Entendemos que tal determinación de la Junta merece la deferencia del foro judicial.</u>[37]

III

No obstante lo anterior, al evaluar las facultades delegadas mediante la Resolución, y sus extensiones, a A.R.P.E., en la Opinión del Tribunal se concluye que la Junta actuó <u>ultra</u> <u>vires</u> al efectuar tal delegación alegadamente debido a que la ley habilitadora de dicha agencia no la facultó para delegar la consideración y concesión de permisos en áreas no zonificadas, determinación que supuestamente requiere una consulta de ubicación que sólo podía efectuarse por la Junta. A juicio de la Opinión mayoritaria esto es así ya que, de una lectura de la ley habilitadora de la Junta,

> "...se desprende que <u>el legislador no tuvo la intención</u> de autorizar a la Junta a delegar en A.R.P.E. la toma de decisiones relacionadas con las áreas no zonificadas. La Ley Núm. 75, *supra*, al enumerar las instancias de delegación de una agencia a otra <u>omite</u> hacer referencia a la delegación de funciones en áreas no zonificadas. A través del estatuto el legislador autoriza la delegación de la consideración de proyectos y enmiendas a los mapas de zonificación sólo en aquellas áreas que han sido previamente zonificadas. Siendo esto así la Junta actuó *ultra vires* y más allá del poder delegado." (Enfasis suplido).[38]

Al parecer, la mayoría de los integrantes de este Tribunal <u>no</u> ha entendido el texto claro del Artículo 11(19)(b) de la ley orgánica de la Junta; el cual claramente dispone que esta última podrá delegar a A.R.P.E. sus deberes y responsabilidades en casos sobre "...la adopción de enmiendas a los mapas de zonificación en

---

[37] Con respecto a la interpretación del organismo al cual le compete administrar una ley, este Tribunal ha resuelto que la misma merece deferencia sustancial y que dicha interpretación no necesita ser la única razonable y consistente con el propósito legislativo. <u>Rivera Rentas</u> v. <u>A. & C. Development Corp.</u>, Opinión y Sentencia de 26 de noviembre de 1997; <u>Comisionado de Seguros</u> v. <u>General Accident Insurance Co.</u>, Opinión y Sentencia de 29 de enero de 1993. Ello es así debido a que dichos organismos cuentan con una vasta experiencia y conocimiento ("expertise") en relación con la materia con la que bregan día tras día. Ibid.

[38] Opinión Per Curiam, págs. 12-13.

áreas previamente zonificadas <u>y la consideración y resolución de consultas de ubicación</u> y de proyectos públicos, ...". (Enfasis suplido).<sup>39</sup>

Nótese que este inciso de la ley enumera <u>tres circunstancias distintas</u> en las cuales la Junta podrá delegar a A.R.P.E. sus deberes y responsabilidades, esto es, en casos referentes a: (1) la adopción de enmiendas a los mapas de zonificación en áreas previamente zonificadas; (2) la consideración y resolución de consultas de ubicación; y (3) la consideración y resolución de consultas de proyectos públicos. <u>Procede que se enfatice el hecho de que, en cuanto a las consultas de ubicación, la ley no hace ninguna distinción entre proyectos en áreas previamente zonificadas o no</u>. La ley <u>únicamente</u> hace tal distinción <u>respecto a la adopción de enmiendas a los mapas de zonificación</u>.

Opinamos pues, arguyendo que la consideración y concesión de permisos de usos temporeros de plantas dosificadoras de asfalto requiriese una consulta de ubicación, que la Junta puede delegar tal función a A.R.P.E. por disposición expresa de su ley orgánica. Decimos arguyendo porque tampoco coincidimos con la determinación de la Mayoría a los efectos de que en este caso era necesario pasar por un procedimiento de consulta de ubicación para conseguir el permiso de uso temporero. <u>Precisamente eso fue lo que se le delegó a A.R.P.E. mediante la resolución</u>. Los únicos proyectos en áreas no zonificadas previamente, que requieren este tipo de consulta, son

---

<sup>39</sup>    23 L.P.R.A. sec. 62j(19). Así también, dicho estatuto habilitador vuelve a recalcar en su Artículo 35 que "[l]a Junta podrá delegar a la [A.R.P.E.] todas aquellas funciones que determine, conforme a lo dispuesto en la [anteriormente citada] sec. 62j(19) de este título, sobre la adopción de enmiendas de mapas de zonificación en áreas previamente zonificadas, <u>así como la consideración y resolución de consultas de ubicación</u> y de proyectos públicos". (Enfasis suplido). 23 L.P.R.A. sec. 63(g).

aquéllos que tengan un impacto físico, económico, ambiental y social significativo. <u>Este no es el caso que nos ocupa</u>.[40]

La Resolución JPD-11 <u>no</u> requiere una consulta de ubicación, puesto que se trata de actividades de corta duración, en áreas no zonificadas y que no tienen una naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, que afecten significativamente el desarrollo del sector. A tenor con la Resolución en cuestión, A.R.P.E. autorizó la instalación temporera de una planta portátil dosificadora de asfalto en el Barrio Borinquén de Caguas, propiedad de Betteroads Asphalt Corporation.

El predio donde se ubicó la planta, predio R-0, no está zonificado. La instalación es temporera y se trata de una obra removible. <u>Además, se obtuvo una declaración favorable de impacto ambiental expedida por la Junta de Calidad Ambiental, conforme al Artículo 4(c) de la Ley Núm. 9 del 18 de junio de 1970[41], sobre política pública ambiental</u>.

No existe evidencia de daño alguno en cuanto a ruido, olores o impacto adverso a la calidad del agua o al servicio energético en el área. La operación de referencia está catalogada como industrial liviano[42] y fuente de emisión menor. La misma no utiliza servicios

---

[40] **Con respecto a este particular, el Reglamento para Procedimientos Adjudicativos de la Junta define el término "consulta de ubicación" como:**

"[el t]rámite mediante el cual la Junta de Planificación evalúa y decide según estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. <u>En áreas no zonificadas incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector...."</u> (Enfasis suplido). 23 R.P.R. Sec. 650.225(6); 23 R.P.R. sec. 650.1648.

[41] **12 L.P.R.A. sec. 1124.**

[42] **El Reglamento de Zonificación de Puerto Rico número 4 establece la definición de industria liviana, que es la que aplica a la planta portátil de asfalto, y señala que se trata de la "industria de manufactura donde los efectos de la operación no trascienden significativamente el ámbito del solar o aquella que con la**

de agua ni alcantarillados. En fin, vemos pues que la planta portátil dosificadora de asfalto no tendría el alcance que haría necesario, según la reglamentación de la Junta, que el proyecto pasara por el proceso de consulta de ubicación por cuanto su impacto no será significativo.

Expresado lo anterior, resulta liviano el argumento elaborado en la Opinión del Tribunal con respecto a que "...si comparamos la instalación de una planta dosificadora de asfalto con las demás actividades que detalla la [Resolución] JPD-11-94-006, veremos que la primera se caracteriza por ser un proyecto de carácter industrial cuyos efectos sobre el ambiente y la infraestructura pueden ser más significativos y serios que los provocados por unas fiestas patronales, verbenas u otro tipo de actividad análoga".

Cuando la Junta decidió adoptar la aludida Resolución y sus extensiones, con el propósito de delegar en A.R.P.E. la consideración y concesión de permisos de usos temporeros de ciertas actividades, lo hizo estableciendo como política pública que estas actividades no podían tener un impacto significativo en el desarrollo de un sector. Entre las actividades mencionadas, además de verbenas o fiestas patronales, están las hormigoneras y las plantas dosificadoras de asfalto.

Consideramos que la Junta, agencia con "expertise", ponderó y dirimió cuales debían ser los casos cuya consideración debía delegarse a A.R.P.E.. Esta determinación merece deferencia judicial[43], máxime cuando en las extensiones se tomaron unas salvaguardas en los casos específicos de plantas dosificadoras de asfalto.

---

instalación de equipo de control ambiental, requerido por la Junta de Calidad Ambiental u otras agencias reguladoras, mitigan o eliminan cualquier efecto significativo adverso que pudiera trascender el solar donde ubica. ...". Reglamento de Zonificación 23 R.P.R. sec. 650.1648(101).

IV

De otra parte, en la Opinión, además de concluirse, erróneamente, que la Ley no facultaba a la Junta a hacer este tipo de delegación, se resuelve que la agencia actuó <u>ultra</u> <u>vires</u> porque en su Reglamento para Procedimientos Adjudicativos se había reservado la facultad de efectuar consultas de ubicación de proyectos industriales que incluyeran las plantas dosificadoras; por lo que no podía, mediante resolución, efectuar esta delegación a A.R.P.E..

En el referido Reglamento la Junta se reservó la facultad de considerar en primera instancia los casos sobre propuestos usos de terrenos permanentes que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector[44]; mientras que delegó en A.R.P.E. la facultad de conceder permisos de usos temporeros sobre este tipo de actividades que no tuvieran el mencionado impacto.

En el caso de las plantas dosificadoras de hormigón o asfalto, la Junta, <u>según su reglamento</u>, realizará la determinación inicial cuando se trate de <u>proyectos industriales permanentes</u> con el impacto reseñado y, A.R.P.E., mediante resolución que contiene las delimitaciones del poder delegado, puede conceder permisos de uso para operar una <u>planta dosificadora temporera</u> que cumpla con las condiciones expresadas en la resolución. <u>Nos preguntamos</u>: ¿en dónde reside la inconsistencia a la que alude el Tribunal en su Opinión? Sencillo: la misma <u>no</u> existe.

Todo este esquema resulta consistente con el Reglamento de Zonificación Número 4 de la Junta, el cual permite a A.R.P.E. conceder permisos de usos temporeros en diversos tipos de

---

[43] <u>Rivera Rentas v. A. & C. Development Corp.</u>, <u>ante</u>; <u>Comisionado de Seguros v. General Accident Insurance Co.</u>, <u>ante</u>.

[44] 23 R.P.R. sec. 650.228(2). Remítase a la nota al calce número 10 de esta Opinión.

"...actividades de corta duración pero sin limitarse a [las allí mencionadas]."[45] Tal listado, como muy bien concluyó el Tribunal de Circuito de Apelaciones, no es ni exhaustivo ni taxativo, meramente ilustrativo; razón por la cual la Junta, además de las actividades de corta duración que incluyera en el Reglamento, puede, mediante resolución, añadir otras actividades de corta duración.

V

En resumen, el error que comete este Tribunal en la decisión que hoy emite se debe a que las conclusiones a las que llega en la misma parten de premisas incorrectas. En primer lugar, no es correcto hablar de que la Junta actuó sin jurisdicción o contrario a su ley habilitadora; ello, como expresáramos anteriormente, porque su propia ley orgánica le permite hacer delegaciones sobre casos que no requieran la implantación de política pública y que puedan ser adoptados, con mayor celeridad, por A.R.P.E.. De este modo, la acción de la Junta, al realizar la delegación mediante la resolución en cuestión, está dentro de los poderes, amplios y generales, que su ley orgánica le autoriza a realizar.

En segundo término, al interpretar que la referida ley habilitadora de la Junta sólo autoriza a ésta a considerar proyectos, y conceder permisos de uso, en áreas zonificadas, la Opinión concluye, erróneamente, que la delegación es ultra vires por cuanto en el presente caso se trata de un área no zonificada. De una lectura de la disposición estatutaria en cuestión, claramente se desprende que no tiene nada que ver si el área está o no zonificada. El listado de facultades a delegar, detallado en el citado Artículo 11(19) de la ley habilitadora –que a nuestro juicio no es un listado taxativo por expresión de la propia ley[46]– permite este tipo de

---

[45]    23 R.P.R. sec. 650.1746.
[46]    "...Esta sección no limitará otras delegaciones que la Junta pudiera realizar al amparo de las disposiciones de este Capítulo..." 23 L.P.R.A. sec. 63(g).

delegación, independientemente de que se trate de un área zonificada o no.

La Junta, además de haber actuado con jurisdicción, actuó en el presente caso acorde a las disposiciones reglamentarias aplicables y a la resolución en controversia, actuaciones que, contrario a lo que se expresa en la Opinión, no son inconsistentes entre sí.

Por las razones anteriormente expresadas, disentimos. Modificaríamos, sin embargo, la sentencia del Tribunal de Circuito de Apelaciones debido a que en la Resolución de la Junta se estableció claramente que el permiso de uso temporero no podía ser por más de dos años y, en el caso de autos, A.R.P.E. lo concedió por un periodo de tres años; razón por lo cual procede modificarse la sentencia recurrida a esos efectos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado