EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Administración de Reglamentos y Permisos, et als.<br><br>    Peticionario<br><br>            v.<br><br>Johnny Rivera Morales y/o Johnny Trucking<br><br>    Recurrido | Certiorari<br><br>2003 TSPR 75<br><br>159 DPR ____ |

Número del Caso: CC-2002-549

Fecha: 8 de mayo de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional V

Juez Ponente:
                    Hon. Mildred G. Pabón Charneco

Abogadas de la Parte Peticionaria:
                    Lcda. Leslie J. Hernández Crespo
                    Lcda. Yanira Mercado Ghigliotty

Abogado de la Parte Recurrida:
                    Lcdo. Pedro R. López de Victoria Gómez

Materia: Procedimiento Especial al amparo de la Ley Núm. 76

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Reglamentos
y Permisos, *et als.*

    Peticionario

       v.                                  CC-2002-549
Certiorari

Johnny Rivera Morales y/o
Johnny Trucking

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 8 de mayo de 2003.

Nos corresponde resolver dos asuntos: En primer lugar, debemos determinar cuál es el alcance de la jurisdicción de la Administración de Reglamentos y Permisos, para adjudicar y evaluar permisos de uso, construcción y de desarrollo de terrenos en áreas no zonificadas. En segundo lugar, debemos determinar los criterios que un tribunal deberá evaluar al presentarse una petición de *injunction* al amparo del Artículo 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. §§ 71 *et seq.*

I

El 14 de julio de 2000, la Administración de Reglamentos y Permisos (en adelante, "ARPE")

concedió un permiso de uso al Sr. Johnny Rivera Morales (en adelante, el Sr. Rivera Morales o "el recurrido"), con el propósito de que operara las oficinas profesionales de su negocio, Johnny Trucking, dedicado al alquiler de equipos pesados y camiones de acarreo.[1]

El 7 de marzo de 2001, el Lcdo. Dennis H. Núñez Ríos, en representación de varios residentes de las comunidades de Christian Belén y Jatibonito del Municipio de Aibonito, remitió una carta a ARPE, en la cual informó que posiblemente el negocio del Sr. Rivera Morales operaba sin los correspondientes permisos de uso. Señaló, además, que las actividades realizadas en dicho negocio interferían con la seguridad, la salud y el disfrute de las propiedades de los vecinos de las áreas colindantes. [2]

Atendiendo los señalamientos del Lcdo. Núñez Ríos, ARPE realizó una serie de inspecciones al negocio del recurrido, siendo la primera de éstas el 16 de marzo de 2001.[3] En esa, se encontró que en las oficinas profesionales de dicho negocio se operaba un área de estacionamientos y de mantenimiento de camiones, sin los

---

[1] Véase Apéndice "E" del Recurso, a la pág. 59. El negocio del Sr. Rivera Morales se encuentra ubicado en la Carretera 14, Km. 48.8, en el Barrio Asomante del Municipio de Aibonito.

[2] Indicó, en su carta, que el negocio del Sr. Rivera Morales generaba ruidos innecesarios desde tempranas horas de la madrugada hasta entrada la noche. Asimismo, señaló que en los terrenos de dicho negocio ubican dos tanques de combustible diesel, los cuales se encuentran a pasos de una quebrada que colinda con dicho solar. Véase Apéndice "E" del Recurso, a las págs. 53-54.

[3] Véase Apéndice "E" del Recurso, a la pág. 55.

permisos de uso requeridos por ley, dentro de un área no zonificada por la Junta de Planificación de Puerto Rico. En consecuencia, el 23 de marzo de 2001, el Lcdo. Núñez Ríos presentó formalmente una querella ante ARPE.

En respuesta a esto, el 20 de abril de 2001, el Sr. Rivera Morales procedió a presentar una Consulta de Ubicación ante dicha agencia, con el propósito de obtener el permiso de uso para el mencionado estacionamiento.[4]

Posteriormente, el 11 de mayo de 2001, ARPE realizó una segunda inspección, en la que determinó que el referido negocio continuaba operando sin los permisos de uso correspondientes. Como resultado de ello, el 18 de junio de 2001, ARPE envió una carta solicitando al recurrido que en un periodo de quince (15) días compareciera ante dicha agencia mostrando evidencia en contrario.[5]

Ante dicho requerimiento, el Sr. Rivera Morales procedió a comunicarse con el Centro de Servicios de ARPE, en Guayama, e informó que había presentado una solicitud de permiso de uso, la cual se encontraba en su fase ambiental. En días posteriores a dicha comunicación, el 30 de julio de 2001, el recurrido compareció personalmente a dicho Centro de Servicios para recibir una orientación al respecto.

---

[4] El señor Rivera Morales alegó, *inter alia*, que al momento de concedérsele el permiso de uso para el establecimiento de sus oficinas profesionales, ARPE no le requirió el correspondiente permiso de uso para el área de estacionamiento. Fue al momento en que intentó obtener la licencia sanitaria cuando el Departamento de Salud le exigió el mismo para todas las estructuras y el estacionamiento. Apéndice "E"del recurso, a las pág. 120-21.

Asimismo, al día siguiente, solicitó por escrito una prórroga de noventa (90) días para cumplir con los requerimientos de la querella. Solicitó, además, que se le concediera un periodo de tiempo suficiente, para realizar una consulta de ubicación ante la Junta de Planificación, ya que entendía que ARPE no tenía jurisdicción en las áreas no zonificadas.[6]

Mediante comunicación escrita de 29 de agosto de 2001, ARPE le informó al recurrido que no tenía delegada la jurisdicción para adjudicar solicitudes de construcción y de permisos de uso en las áreas no zonificadas, por lo que recomendó a éste que gestionara ante la Junta de Planificación la correspondiente consulta de ubicación y la tramitación de dichos permisos.

Así las cosas, el 5 de octubre de 2001, ARPE realizó una tercera inspección en la que encontró que el negocio del recurrido continuaba operando sin los permisos exigidos por ley.[7]

Ante tales circunstancias, el 16 de noviembre de 2001, ARPE presentó una Petición de *Injunction* ante el Tribunal de Primera Instancia, Sala Superior de Aibonito (en adelante, TPI) al amparo de los artículos 16, 17 y 28 de su ley habilitadora, Ley Núm 76, *supra*, para que dicho foro expidiese una orden paralizando inmediatamente los usos ilegales de las áreas de estacionamiento de Johnny

---

[5] Apéndice "E" del Recurso, a la pág. 61.
[6] Apéndice "E" del Recurso, a la pág. 64.

[7] Apéndice "E" del Recurso, a la pág. 65.

Trucking. El 29 de noviembre de 2001, el TPI ordenó la paralización temporera del uso ilegal al que se estaba dedicando el negocio del Sr. Rivera Morales y señaló la vista del caso para el 28 de diciembre de 2001, la cual se reseñaló, a su vez, para el 7 de febrero de 2002.[8]

Dos días antes de la celebración de la vista, el 5 de febrero de 2002, ARPE realizó una cuarta inspección. Nuevamente, se encontró que el negocio del Sr. Rivera Morales continuaba operando; en esta ocasión, en desafío a la orden de paralización emitida por el TPI.[9]

Así las cosas, en la vista celebrada el 7 de febrero de 2002, ARPE solicitó al TPI que ordenara la paralización permanente de las operaciones del negocio del recurrido debido a que se encontraba funcionando en contravención al ordenamiento jurídico vigente. Por su parte, el Sr. Rivera Morales alegó que ARPE carecía de jurisdicción para conceder permisos en áreas no zonificadas, lo cual la deslegitimaba para reclamar por el cumplimiento de las leyes y reglamentos aplicables a dichas áreas. Asimismo, le notificó a dicho foro que había presentado ante la Junta de Planificación la Consulta de Ubicación número 2002-68-0055-JPU para operar el estacionamiento de vehículos pesados como uso industrial.[10] El TPI ordenó a ambas partes

---

[8] Apéndice "E" del Recurso, a las págs. 68-71.

[9] Apéndice "E" del Recurso, a la pág. 77.

[10] Apéndice "E" del Recurso, a la pág. 78.

someter memorandos de Derecho en los cuales ampliaran la discusión sobre el asunto jurisdiccional.

Luego de examinar dichos memorandos, y tras varios incidentes procesales, el 8 de marzo de 2002, **el TPI ordenó la paralización de los procedimientos en el caso de autos ante ese foro hasta tanto la Junta de Planificación pusiera en vigor las disposiciones de la Ley Número 129 del 12 de septiembre de 2001.** De igual forma, le concedió al Sr. Rivera Morales el término de cuarenta y cinco (45) días para culminar con el proceso de obtención o denegación del permiso solicitado, una vez la Junta de Planificación aprobara la reglamentación pertinente, la cual pondría en vigor las disposiciones de la Ley Núm. 129, *supra.* El TPI permitió, además, que se continuara con la operación del negocio del recurrido atendiendo al hecho de que no se realizaran actividades que afectaran la comunidad aledaña, ni el medio ambiente.[11]

Inconforme, el 12 de abril de 2002, ARPE recurrió al Tribunal de Circuito de Apelaciones (en adelante, "TCA") señalando que había errado el TPI al no dictar la orden de paralización permanente solicitada; y al ordenar la paralización de los procedimientos ante ése foro, permitiéndole a Johnny Trucking continuar con sus operaciones sin los permisos de uso correspondientes. El TCA, mediante resolución de 17 de junio de 2002, procedió a revocar la determinación del foro de instancia y concluyó

---

[11] Apéndice "E" del Recurso, a las págs. 132-35.

que la concesión de permisos de uso en áreas no zonificadas

es materia dentro de la competencia exclusiva de ARPE, y

como tal goza de legitimación para presentar un injunction

ante el TPI con miras a prohibir cualquier uso no

autorizado en dichas áreas.[12] Dicho foro devolvió el caso a

instancia para que se considerara el correspondiente

balance de intereses en conflicto, a los fines de evaluar

si procedía conceder un *injunction* permanente en el caso de

autos.[13]

De esta Resolución, acude ante nos ARPE formulando el

siguiente señalamiento de error:

> Erró el Tribunal de Circuito de
> Apelaciones al ordenar al Tribunal de
> Primera Instancia, Sala Superior de
> Aibonito, considerar el balance de
> intereses en conflicto y los
> planteamientos de la parte recurrida al
> momento de adjudicar la controversia como
> si se tratara de un injunction clásico.

Mediante Resolución de 20 de septiembre de 2002,

expedimos el auto de *certiorari*.   Contando con la

comparecencia de ambas partes, resolvemos.

---

[12] El TCA fundamentó su decisión citando que "[a]unque la facultad de la Junta de delegar a ARPE aprobaciones de consultas en áreas no zonificadas pueda resultar controversial, su potestad de delegarle funciones en etapas operacionales de proyectos o cuya decisión no requiera implantar o definir una política pública general no lo es. Creemos que la presentación de una petición de injunction para prohibir a una parte operar un negocio sin el correspondiente permiso de uso pertenece a este último tipo de determinación." Apéndice "A" del recurso, a la pág. 13.

[13] Asimismo, concluyó el TCA que no percibía fundamento en derecho alguno, para que el TPI se abstuviera de adjudicar la petición y paralizar los procedimientos.  Apéndice "A" del Recurso, a las págs. 1-14.

II

Desde el siglo pasado, ha sido política pública del Gobierno del Estado Libre Asociado de Puerto Rico dirigir el proceso de planificación de nuestra isla hacia un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos naturales para el disfrute y beneficio de todos.[14]

Atendiendo estos principios, el 24 de junio de 1975, se promulgó la Ley Núm. 75, conocida también como la "Ley Orgánica de la Junta de Planificación de Puerto Rico" (en adelante, "Ley Núm. 75"), 23 L.P.R.A. §§ 62 *et seq.*, la cual designó a la Junta de Planificación como el organismo estatal encargado de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado y económico. Ello, con el propósito de fomentar la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y lograr la mayor eficiencia en el uso de las tierras y de otros recursos naturales. 23 L.P.R.A. §62(c).

Asimismo, surge de la Exposición de Motivos de dicha ley, que se reconoció la necesidad de crear un organismo gubernamental que tuviese a su cargo las facultades, en las fases operacionales, que hasta ése entonces correspondían a la Junta de Planificación.[15]

---

[14] Véase *Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico,* 23 R.P.R. §§650.821 *et seq.*

[15] Ello debido a que el cúmulo de funciones que la Junta tenía le impedía cumplir con su rol primordial de orientar y coordinar el desarrollo integral de Puerto Rico.

Así, mediante la Ley Núm. 76 de 24 de junio de 1975, *supra*, se creó a ARPE, cuerpo que inmediatamente pasó a ser el brazo operacional de la Junta de Planificación, al estar encargada de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación, y de los propios reglamentos que a tales fines se adopten. 23 L.P.R.A. sec. 71 (d); véase además *A.R.P.E. v. Ozores*, 116 D.P.R. 816 (1986). Con la aprobación de ambas leyes, se delegaron en ARPE varias facultades, algunas de las cuales veremos a continuación.

Según lo dispuesto en la Ley Núm. 75, supra, se delegó competencia a ARPE en aquellos casos o determinaciones en que medien cualesquiera de las siguientes cuatro condiciones:

(1) **Casos en que se requiera acción en la "fase operacional";**

(2) **Casos en que la estructuración o decisión a adoptarse no requiera implantar una política general o una definición de política pública, por haber sido establecidas o adoptadas por la Junta.**

(3) **Casos en que la Junta determine, a la luz de la función de dicha Administración, que pueden resolverse los casos o adoptarse las determinaciones con más celeridad o eficiencia por la Administración;** y

(4) **Casos en que la delegación de estos no cause entorpecimiento indebido a dicha agencia para cumplir con las funciones que la ley impone.** Véase 23 L.P.R.A. §62(j) (19)(a).

Asimismo, la Ley Núm. 75, *supra*, faculta a la Junta a delegar en ARPE la autoridad para adoptar enmiendas a los mapas de zonificación en áreas previamente zonificadas por la Junta, y podrá considerar y resolver consultas de ubicación y de proyectos públicos. 23 L.P.R.A. §62(j)(19)(b).[16]

Posteriormente, mediante la Ley Núm. 129 de 12 de septiembre de 2001, la Asamblea Legislativa enmendó la Ley Núm. 75, *supra*, a los únicos efectos de añadir una quinta condición en la cual se faculta a la Junta a delegar en ARPE la facultad para considerar algunos trámites operacionales en las áreas no zonificadas por la Junta de Planificación.[17]   A

---

[16] La Junta de Planificación posee entre sus facultades el poder para adoptar un Reglamento de Zonificación, de manera que pueda guiar y controlar el uso y desarrollo de los terrenos en Puerto Rico tanto en áreas urbanas como rurales. **Mediante la zonificación se establecen las normas esenciales sobre cómo y donde deben ubicarse las múltiples actividades sociales y económicas de Puerto Rico.** A través de este proceso se clasifican los terrenos en zonas o distritos **y se establecen para cada uno disposiciones específicas sobre el uso de los terrenos y sobre las obras y estructuras a permitirse.** Véase Introducción del Reglamento de Planificación Núm. 4.  Existen varias razones por las cuales la Junta de Planificación puede decidir no zonificar un área, entre ellas podemos destacar el que se quieran congelar terrenos para futuros desarrollos; o que se quieran proteger por cuestiones ambientales; o que se especule sobre el valor de los mismos; o simplemente que aún no se haya zonificado. Por ello, se entiende que en algunas de estas áreas no zonificadas se debe presentar la consulta de ubicación en primera instancia a la Junta.

[17] Surge de la Exposición de Motivos de dicha Ley que la razón principal por la que la Asamblea Legislativa enmendó la Ley Núm. 75 fue a consecuencia de una decisión emitida por este Tribunal en el caso de *Comité de Vecinos Pro-Mejoramiento, Inc. v. Junta de Planificación de Puerto Rico*, 147 D.P.R. 750 (1999), en el que concluimos que:

> "De las disposiciones legales relacionadas con la delegación de funciones de la Junta de Planificación a la Administración de Reglamentos y Permisos **se**

tono con lo anterior, se procedió a añadir un quinto apartado

al inciso 19 del Artículo 11 de la Ley, disponiendo lo

siguiente:

> (a) Casos o determinaciones **en las que
> medien cualesquiera de las siguientes
> condiciones:**
>
> (1)  ...
> (2)  ...
> (3)  ...
> (4)  ...
>
> (5)  **que la Junta no se haya reservado
> jurisdicción exclusiva para
> atender dichos casos y los mismos
> se relacionen con áreas no
> zonificadas. En estos casos, las
> decisiones que pueda tomar la
> Administración no establecerán una
> política general o definirán
> política pública, quedando esta
> responsabilidad en jurisdicción
> exclusiva de la Junta.**

**La aprobación de dicha enmienda estaba sujeta a que la**

**Junta de Planificación elaborara dentro del término de**

**noventa (90) días y adoptara, bajo las disposiciones**

---

> **desprende que el legislador no tuvo la
> intención de autorizar a la Junta a delegar
> en ARPE la toma de decisiones relacionadas
> con las áreas no zonificadas. La Ley Núm.
> 75 de 24 de junio de 1975,..., al enumerar
> las instancias de la delegación de una
> agencia a otra, omite hacer referencia a la
> delegación de funciones en áreas no
> zonificadas. A través del estatuto, el
> legislador autoriza la delegación de la
> consideración de proyectos y enmiendas a
> los mapas de zonificación sólo en aquellas
> áreas que hayan sido previamente
> zonificadas.**

En dicho caso, este Tribunal concluyó que ARPE no tenía
delegada la facultad para considerar propuestos usos
temporeros de terrenos en los casos de plantas dosificadoras
de asfalto en áreas no zonificadas. Por consiguiente, era
necesario efectuar el trámite correspondiente de consulta de
ubicación ante la Junta de Planificación.

**pertinentes de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada,** la reglamentación necesaria para definir con precisión el alcance, responsabilidades, limitaciones y condiciones de la delegación otorgada mediante esta Ley. **Dichas facultades y responsabilidades delegadas entrarían en vigor una vez fuese aprobada la reglamentación descrita en ése Artículo por el Secretario de Estado o el Gobernador.** Véase además, 23 L.P.R.A. §62(j)(19)(b).

Por tal razón, la Junta de Planificación elaboró el **"Reglamento para Delegar a la Administración de Reglamentos y Permisos la Adjudicación de Permisos de Usos y Construcción y Desarrollo de Terrenos en Áreas No Zonificadas y Para Establecer Criterios para su Evaluación"**, conocido también como el **"Reglamento para Delegar Funciones en Áreas No Zonificadas"**. *Véase* Reglamento de Planificación Núm. 27 de 5 de septiembre de 2002, _ R.P.R. _, aprobado mediante la Orden Ejecutiva 2002-44. En éste, se establecieron los criterios mínimos para guiar y controlar el uso y desarrollo de los terrenos en áreas no zonificadas de Puerto Rico con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de sus futuros habitantes.[18]

Así, con la aprobación de dicho reglamento, se delegó en ARPE la facultad para conceder permisos de uso y construcción y el desarrollo de terrenos en áreas zonificadas y no

---

[18]Lo anterior, contribuye a regular la discreción de ARPE al ejercer las facultades delegadas y establece unas normas y criterios claros en los procedimientos ante dicha agencia en beneficio de los ciudadanos.

zonificadas, en las que la Junta considere que pueden ser atendidas con mayor agilidad y eficiencia por dicha agencia y en aquellas que no se requiera la implantación de una política pública.[19]  Véase Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*, § 1.03.[20]  Asimismo, todas las determinaciones que ARPE tome a base de las delegaciones que le han sido autorizadas, deberán ser consistentes con las políticas, normas y reglamentos adoptados por la Junta de Planificación.  Artículo 11 de la Ley Núm. 75, *supra*, 23 L.P.R.A. § 62(j)(19)(b).

---

[19]  Desde la aprobación del referido reglamento, ARPE podrá conceder permisos para aquellos usos que se vayan a dedicar a los siguientes fines: agroindustriales y agropecuarios; casas de una (1) o dos (2) familias; edificios para apartamentos de hasta diez (10) unidades básicas de viviendas; hospedajes especializados; centros de cuidos de niños y envejecientes; **proyectos de carácter industrial liviano que no excedan de quince mil (15,000) pies cuadrados**; estaciones de gasolinas, diesel o ambos; usos y edificios accesorios; proyectos de carácter recreativos; actividades o usos temporeros, tales como carnavales, verbenas, fiestas patronales, actividades religiosas, entre otros. Véase Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*, §§ 4.00 *et seq.*

[20]  En tiempos anteriores, el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación requería que se realizara una consulta de ubicación ante dicha agencia

continúa...

[20] ...**continuación**
cuando se solicitaban posibles usos o variaciones de los mismos en las áreas no zonificadas, en aquellos proyectos cuya naturaleza y magnitud tuviesen un impacto significativo en el ambiente físico, económico y social del sector en que se ubicasen. Esto cambió a partir de la aprobación del Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*. De ahora en adelante, los proyectos que requerirán presentar una consulta de ubicación previamente a la Junta serán aquellos en que ésta se haya reservado jurisdicción exclusiva, a tenor con lo dispuesto en dicho reglamento y la Ley de Municipios Autónomos, Ley 81 de 30 de agosto de 1992, según enmendada.

Una vez definido el alcance de la jurisdicción de ARPE respecto a las áreas no zonificadas, nos corresponde determinar cuales mecanismos dicha agencia tiene a su disposición para hacer valer las leyes y reglamentos de planificación y de las determinaciones que la Junta y dicha agencia tomen en cuanto a la planificación y desarrollo de terrenos en Puerto Rico.  Veamos.

III

Además de tener delegada la facultad de conceder y evaluar permisos de uso tanto en áreas zonificadas como en las que no lo están, la ley habilitadora de ARPE establece unos mecanismos que dicha agencia podrá utilizar para velar por el cumplimiento de las leyes y los reglamentos de planificación.  De igual forma, podrá hacer uso de aquellos remedios legales necesarios para velar por el cumplimiento efectivo de sus determinaciones. *A.R.P.E. v. Ozores, supra,* a la pág. 821.

El Artículo 16 de la Ley Núm. 76, *supra*, dispone que no podrá usarse ningún terreno o edificio, ni ninguna parte de estos, a menos que el uso sea de conformidad con los reglamentos que para el desarrollo y uso de terrenos, así como para la construcción y uso de edificios que a esos fines hayan sido adoptados o de acuerdo al permiso que haya sido otorgado por ARPE.  Dicho artículo consigna la prohibición de usos de terrenos o edificios sin el debido permiso de ARPE.

De haber algún uso en violación a dichas leyes o reglamentos, el Artículo 26 de la ley habilitadora de ARPE le permite a ésta interponer los recursos adecuados en ley para

"impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, usado o mantenido en violación a las disposiciones de dicha ley o de cualquiera de los reglamentos que regulen la construcción y uso de edificios y pertenencias en Puerto Rico."

En ese mismo sentido, el Artículo 28 de la Ley Núm. 76, *supra*, dispone además que:

El **Administrador [de ARPE]** o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, **podrá entablar recurso de interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.**

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en la ley para evitar infracciones a este Capítulo y a todos los reglamentos relacionados con la misma para evitar cualquier estorbo (nuisance) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:

(a) **Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico** identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, eregido, exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, **en violación de este Capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente,** bajo apercibimiento de desacato la

obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho [...]²¹

En *ARPE v. Rodríguez*, 127 D.P.R. 793 (1991), este Tribunal tuvo la oportunidad de definir el alcance del citado Artículo. En dicha ocasión, concluimos que la razón de ser del Artículo 28 de la Ley Núm. 76, *supra*, es "hacer viable, a la vez que vindicar, el cumplimiento de la Ley de A.R.Pe. y la reglamentación correspondiente." Id. a la pág. 803.

Se señaló además que dicho Artículo faculta al Administrador de ARPE, al Secretario de Justicia o a cualquier propietario u ocupante de una propiedad vecina que resulte perjudicado o pueda resultar perjudicado a obtener de cualquier juez del TPI una orden provisional o permanente paralizando cualquier construcción o uso contrario a las leyes y reglamentos de planificación. Asimismo, concluimos que **el mecanismo que provee dicho articulado es uno estatutario, especial y sumario limitado a la obtención de órdenes para la paralización inmediata, provisional o permanente, de usos contrarios a la ley**. *ARPE v. Rodríguez*, *supra*, a las págs. 808-09 (1991).

Así, por ejemplo, cuando se realicen actividades industriales livianas (I-1)²² tales como una estación de gasolina o un taller de venta de vehículos pesados en un área

---

²¹ Véase Artículo 28 de la Ley Núm. 76, *supra*.
²² La zona industrial (I-1) se establece para clasificar áreas para el establecimiento de las industrias livianas. Se persigue que los terrenos para industrias livianas se dediquen a tales fines, excluyendo en estos distritos el uso residencial e incluyendo ciertos usos comerciales. Véase Reglamento de Zonificación de Puerto Rico, § 27.01.

que se encuentre zonificada como una residencial cero (R-0),[23]

sin tener los permisos requeridos por ley, este articulado le

provee legitimación al Administrador de ARPE para que a

través de un recurso de interdicto, o cualquier otro análogo

a tal fin, pueda solicitar la paralización del uso ilegal del

que se trate.

Cuando se trate de una petición de *injunction* autorizado

expresamente por dicho estatuto, es importante aclarar que

éste no surge de la *jurisdicción de equidad de la corte*, en

virtud del cual el tribunal ordena a una persona bajo

apercibimiento de desacato que realice o deje de realizar un

acto que infrinja o perjudique el derecho de otro.  En esto

se diferencia del injunction clásico u ordinario. **Tampoco se**

**requiere alegación ni prueba de daños irreparables, y sólo la**

**determinación de que el demandado ha violado las**

**disposiciones de la ley**.  *Pueblo v. A. Roig, Sucrs.*, 63

D.P.R.  18,  38-39  (1944);  *Véase además*,  D.  Rivé  Rivera,

Recursos  Extraordinarios,  2da  Ed.,  Programa  de  Educación

---

[23] La zona residencial cero es un distrito de baja densidad
poblacional, con solar mínimo de ocho mil (8,000) metros
cuadrados, se establece para facilitar el control de la
expansión o crecimiento urbano; proteger la utilidad de las
vías arteriales; preservar terrenos de alta productividad
agrícola; proteger áreas que requieran la protección de su
flora o fauna  por su  importancia  económica, ecológica  o
**continúa...**
[23] **...continuación**
científica; y proteger el disfrute y preservación de recursos
de interés público tales como rasgos topográficos, bosques,
arboledas,  paisajes,  formaciones  geológicas,  manantiales,
quebradas,  ríos,  lagos,  lagunas,  fuentes
naturales de agua, mangles, yacimientos minerales o playas.
Véase Reglamento de Zonificación de Puerto Rico, §§ 10.01 et
seq.

Jurídica Continua de la facultad de Derecho de la Universidad Interamericana de Puerto Rico, págs. 19-20.[24]

En fin, el Artículo 28 provee el mecanismo de injunction para hacer cumplir las leyes y reglamentos de planificación. De este modo, al interponerse una petición de injunction al amparo del Artículo 28 de la Ley Núm. 76, *supra*, éste deberá evaluarse según los criterios establecidos en dicho estatuto. Por tal razón, cualquier persona legitimada para llevar a cabo dicha acción deberá traer a la consideración del tribunal los siguientes dos factores: (1) que existe una ley o reglamento que regula dicho uso o actividad; y (2)que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento.

V

Los hechos que dieron lugar a la acción en el caso de autos, se originaron el 23 de marzo de 2001, fecha de la presentación de la querella ante ARPE en contra del negocio del Sr. Rivera Morales. Luego de realizar varias

---

[24] Para determinar la procedencia de un injunction ordinario, es necesario que los tribunales consideren los siguientes criterios: (1) la naturaleza de los daños que puedan ocasionarse a las partes de concederse o denegarse el injunction; (2) la irreparabilidad del daño o la
**continúa...**

[24] **...continuación**
existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el injunction; y (5) el posible impacto sobre el interés público del remedio que se solicita. Estos criterios son guías que dirigen al Tribunal al momento de decidir si la prueba ante su consideración justifica la expedición del recurso. Por lo tanto, la concesión del remedio sólo descansa en la sana discreción del juzgador. *P.R. Telephone Co.* v. *Tribunal Superior*, 103 D.P.R. 200, 202 (1975).

inspecciones y constatado que el recurrido incumplía con las leyes y reglamentos de planificación, ARPE presentó el 16 de noviembre de 2001 una petición de *injunction* ante el TPI, solicitando que se paralizara todo uso indebido del negocio. Es decir, el recurso se presentó sesenta y cinco (65) días después de haberse aprobado por la Legislatura la Ley Núm. 129, la cual enmendó la Ley Orgánica de la Junta de Planificación, *supra*, autorizando a la Junta a delegar en ARPE las facultades de adjudicación de permisos de usos y construcción y desarrollo de terrenos en áreas no zonificadas.

A esa fecha, la Ley Núm. 129 no había entrado en vigencia debido a que la Junta de Planificación se encontraba en el proceso de aprobación del Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*. Ante esta circunstancia, al hacer su determinación de paralizar o no, el TPI concluyó que el remedio adecuado era la paralización de los procedimientos ante ese foro y concederle al Sr. Rivera Morales un plazo de cuarenta y cinco (45) días desde que se implementara el correspondiente reglamento para que cumpliera con las disposiciones de la Ley Núm. 129, *supra*. Asimismo, autorizó al Sr. Rivera Morales a que operara su negocio sin que afectara las áreas colindantes ni el medio ambiente.

El TCA procedió a revocar dicha sentencia del TPI y le devolvió el caso para que evaluara en su determinación el balance de intereses en conflicto, luego del recurrido argumentar que si se paralizaba su negocio sus pérdidas

serían irrecobrables. Al concluir esto, dicho foro citó como base lo resuelto por este Tribunal en *ARPE v. Ozores*, *supra*.[25] No estamos de acuerdo.

Según hemos reseñado en las secciones precedentes, ARPE es la encargada de aplicar y velar por el cumplimiento de sus propios reglamentos, y de los reglamentos de Planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo y uso de terrenos y para la construcción y uso de edificios. Artículo 5 de la Ley Núm. 76, *supra*. De acuerdo a lo anterior, lo fundamental en el presente caso es determinar si se estaba haciendo un uso ilegal de algún espacio de terreno. En otras palabras, si el negocio Johny Trucking operaba contrario a lo establecido en los reglamentos de planificación o de uso de terrenos, y de cuyo cumplimiento ARPE tiene la obligación de velar.

Ante los hechos del caso, lo que procedía era que el TPI declarara con lugar el recurso de injunction presentado por ARPE debido a que el uso operado era distinto al uso aprobado. El Sr. Rivera Morales operaba un uso industrial de estacionamiento y mantenimiento de vehículos pesados cuando el uso aprobado por ARPE se refería a la operación de las

---

[25] La decisión original de dicho caso estableció que había que considerar el correspondiente balance de intereses en conflicto. Posteriormente, ARPE solicitó la reconsideración señalando que bajo su Ley Orgánica no era necesario considerar el balance de intereses entre dicha agencia y el demandado. Mediante resolución de 13 de febrero de 1986, este Tribunal eliminó aquellas parte de la Opinión y de la Sentencia que hacían referencia a la consideración del balance de intereses en conflicto. En ese sentido, establecimos que en toda petición injunction que se inste al amparo del Artículo 28 de la Ley Núm. 76, *supra*, debe de seguirse el procedimiento establecido por dicho Artículo.

oficinas profesionales de su negocio Johnny Trucking. Así también, la Junta de Planificación, la cual en ése momento tenía jurisdicción exclusiva para atender la realización de consultas de ubicación y concesión de permisos en áreas no zonificadas, tampoco había autorizado dicho uso.

Por lo tanto, la evaluación que correspondía hacer al TPI, era si el uso de estacionamiento y mantenimiento de vehículos pesados requería el permiso de ARPE o de la Junta de Planificación; y si el mismo se obtuvo o no. Por tales razones, al haberse dado un uso distinto para el cual fue autorizado, debió ordenarse la paralización de las operaciones de dicho negocio.

Procede revocar la Sentencia emitida por el Tribunal de Circuito de Apelaciones que a su vez revocó la Sentencia del Tribunal de Primera Instancia y devolver el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de acuerdo a lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                              Baltasar Corrada del Río
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Administración de Reglamentos y
Permisos, *et als*

   Peticionario

     v.                                    CC-2002-549

Johnny Rivera Morales y/o Johnny
Trucking

   Recurrido


SENTENCIA

San Juan, Puerto Rico, a 8 de mayo de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, procede revocar la Sentencia emitida por el Tribunal de Circuito de Apelaciones que a su vez revocó la Sentencia del Tribunal de Primera Instancia y devolver el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de acuerdo con lo expresado en esta Opinión.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Presidente señor Andréu García y el Juez Asociado señor Rivera Pérez no intervinieron.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo