Pabón Charneco, Jueza Ponente
*672 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la Administración de Reglamentos y Permisos, en adelante, A.R.P.E., solicitando la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Orocovis. Mediante dicho dictamen, el tribunal a quo denegó una solicitud de A.R.P.E. al amparo del Art. 28 de la Ley Núm. 76 de 24 de junio de 1975, según enmendada, conocida como “Ley Orgánica de la Administración de Reglamentos y Permisos“, 23 L.P.R.A. see. 72.
Por las razones que expresamos a continuación, se revoca la Resolución apelada.
I
Conforme surge del recurso ante nuestra consideración, A.R.P.E. le concedió un permiso de uso al Centro de Cuido de Niños Arrullo Maternal. El 1 de agosto de 2001, Edwin Burgos Rodríguez, en adelante, Burgos, remitió una carta a A.R.P.E. solicitando la investigación del Permiso de Uso otorgado. A su vez, el 8 de agosto de 2001, Burgos instó querella ante la agencia. En la misma, solicitó se revocara el Permiso de Uso concedido arguyendo que A.R.P.E. no tenía jurisdicción para otorgar permisos en áreas no zonificadas.
Así las cosas, el 17 de septiembre de 2001, A.R.P.E. realizó una inspección encontrándose que en la dirección objeto de la querella operaba el mencionado Centro de Cuido Diurno con Permiso de Uso Núm. 01PU7-00000-01765. El 28 de noviembre de 2001, el Centro de Servicios en Ponce emitió un Aviso de Vista Administrativa a fin de discutir el Permiso de Uso otorgado para operar el Centro de Cuido Diurno. La Vista Administrativa se señaló para el 20 de diciembre de 2001. Llegada dicha fecha, la misma fue suspendida, reseñalándose para el 24 de enero de 2002.
Previamente, el 27 de marzo de 2001, Liza I. Real Torres, en adelante, Real, presentó ante A.R.P.E. una Solicitud de Permiso de Uso en el Centro de Servicios de Ponce para operar el Centro de Cuido Diurno. Génesis de lo anterior fue la aprobación de la Ley Núm. 129 de 12 de septiembre de 2001. La inspección del local se realizó el 29 de marzo de 2001.
Así las cosas, el 25 de octubre de 2002, el Centro de Servicios de Ponce emitió una Resolución declarando nulo el Permiso de Uso concedido, a saber, el número 01PU7-00000-01765 por haberse otorgado sin jurisdicción. El 4 de noviembre de 2002, se emitió nueva Resolución reiterando la nulidad del Permiso de Uso concedido.
El 19 de marzo de 2003, se realizó una tercera inspección en la dirección objeto de la querella en donde se encontró el uso en operación sin permiso. El 9 de abril de 2003, la Gerente del Centro de Servicios de Ponce le remitió una comunicación a Real haciéndole unos señalamientos sobre la evaluación del permiso y en adición notificándole que continúa operando el Centro de Cuido Diurno sin contar con un Permiso de Uso.
El 19 de marzo de 2003, se instó una Petición ante el Tribunal de Primera Instancia al amparo del Art. 28 de la Ley Núm. 76, supra. El tribunal a quo señaló la vista del caso para el 29 de abril de 2003. En dicha vista, A. R.P.E. solicitó se emitiera una Orden de Paralización Permanente por estar operando el uso en contravención al ordenamiento legal vigente. Se le informó al foro de instancia que Real tenía la Solicitud de Permiso de Uso pendiente de evaluación.
*673 Ante lo planteado por A.R.P.E., el Tribunal de Primera Instancia le concedió término a Real para que completara el proceso señalando una vista de seguimiento para el 3 de junio de 2003. En dicha vista, Real recibió Resolución de A.R.P.E. denegando el Permiso de Uso solicitado. Debido a que Real no contaba con representación legal, se reseñaló la vista para el 10 de junio de 2003. A dicha vista comparecieron A.R.P.E. y Real.
Real planteó que la denegación del Permiso de Uso solicitado había sido sumaria. Asimismo, alegó que había solicitado reconsideración de la Resolución emitida por A.R.P.E. La agencia, por su parte, argüyó que el Centro de Cuido Diurno estaba operando sin Permiso de Uso por lo que el Tribunal de Primera Instancia debía ordenar la paralización a tenor con A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986).
Escuchados los argumentos de las partes, el tribunal a quo denegó la Orden de Paralización Permanente del Centro de Cuido Diurno.
Inconforme con dicha determinación, A.R.P.E. recurre a este Tribunal. Contando con el beneficio de la parte apelada, procedemos a resolver.
II
En su recurso, A.R.P.E. plantea que incidió el Tribunal de Primera Instancia al no dictar la Orden de Paralización Permanente según solicitado.
III
Desde el siglo pasado, ha sido política publica del Gobierno de Puerto Rico dirigir el proceso de planificación de la Isla hacia un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos para el disfrute y beneficio de todos. Administración de Reglamentos y Permisos, et als v. Johnny Rivera Morales y/o Johnny Trucking, _ D.P.R. _ (2003), 2003 J.T.S. 75.
A la luz de lo anterior, durante el año 1975, la Asamblea Legislativa de Puerto Rico reorganizó el sistema de planificación de Puerto Rico. A esos efectos, aprobó la Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como “Ley Orgánica de la Junta de Planificación de Puerto Rico” y la Ley Núm. 76, supra. La primera autorizó una nueva ley orgánica para la Junta de Planificación y la segunda creó a A.R.P. E. Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750 (1999).
Entre los objetivos que enmarcan la aprobación de la Ley Núm. 75, supra, está el siguiente:

“[...] guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de la población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente. ”

Art. 4 de la Ley Núm. 75, supra, 23 L.P.R.A. sec. 62c.
El Art. 11 de la Ley Núm. 75, supra, enumera las funciones y facultades de la Junta de Planificación. Entre ellas, incluye preparar y adoptar planes de usos de terrenos y establecer la política pública que conduzca al establecimiento de un plan de desarrollo integral de Puerto Rico. Com. Vec. Pro-Mej., Inc. v. J.P., supra. Así, *674 también, reconoce la facultad de la Junta de Planificación de delegar en A.R.P.E. algunos de sus deberes y responsabilidades. Id. Sobre éste último aspecto dicha disposición reza:

(19) Delegar en la Administración de Reglamentos y Permisos deberes y responsabilidades que, en ley o de acuerdo a los Reglamentos de Planificación, se reserven a la Junta, en los siguientes• casos:

Casos o determinaciones en los que medien cualesquiera de las siguientes condiciones:

“(i) Que requieran acción en la ‘fase operacional’, según se define en este Capítulo.

(ii) Que la estructuración o decisión a adoptarse no requiera implantar una política general o una definición de política pública, por haber sido éstas ya establecidas o adoptadas por la Junta;

(iii) Que la Junta determine, a la luz de la función de dicha Administración, que pueden resolverse los casos o adoptarse las determinaciones con más celeridad o eficiencia por la Administración; y

(iv) Que la delegación de éstos en la Administración no cause entorpecimiento indebido a dicha agencia para cumplir con las funciones que la ley impone.

(b) La adopción de enmiendas a los mapas de zonificación en áreas previamente zonificadas y la consideración y resolución de consultas de ubicación y de proyectos públicos, salvo en aquellos casos en que la Junta de Planificación delegue tales funciones a las Comisiones Locales o Regionales de Planificación u otros organismos.

23 L.P.R.A. sec. 62j.
Por otro lado, en materia de planificación física, la A.R.P.E. es una criatura producto de la legislación conjunta y coetánea arriba mencionada donde la fase operacional y de permisología queda enteramente bajo esta agencia y los elementos conceptuales, reglamentarios y de zonificación permanecen en la Junta de Planificación. Leyes Núms. 75 y 76, supra.
A tales efectos, el Art. 5 de la Ley Núm. 76, supra, establece que A.R.P.E. tendrá las siguientes facultades, entre otras:
(p) Aplicar y velar el cumplimiento de sus propios reglamentos, de los Reglamentos de Planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo, subdivisión y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico.

(q) Ejercer las funciones, deberes y responsabilidades que delegue la Junta de Planificación, conforme a la autorización y condiciones consignadas mediante Resolución de la Junta, reglamento o en las sees. 62 a 63j de este título.

*675 23 L.P.R.A. sec.71d
En relación al inciso (p) en Junta de Planificación v. J.A.C.L., 109 D.P.R. 210 (1979), el Tribunal Supremo expresó:

“En virtud de la nueva Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71, se adoptó un nuevo esquema administrativo mediante el cual se transfirió a A.R.P.E. las funciones operacionales que hasta entonces desempeñaba la Junta de Planificación y se confirió a este nuevo organismo la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. La Junta de Planificación quedó estructurada por una nueva ley orgánica que la liberó de esas funciones operacionales y, por otro lado, fortaleció sus funciones de integrar y coordinar la formulación de política pública sobre el desarrollo físico, económico y social de Puerto Rico....”.

A las págs. 214 y 215.
A su vez, el Art. 16 de la Ley Núm. 76, supra, dispone que no podrá usarse ningún terreno o edificio, ni ninguna parte de éstos, a menos que el uso sea de conformidad con los reglamentos que al efecto se preparen y de acuerdo con el permiso que se conceda por A.R.P.E.
Desde su creación y al amparo de los preceptos mencionados, A.R.P.E. expidió miles de permisos en áreas no zonificadas en todo Puerto Rico. Ningún tribunal o agencia administrativa había cuestionado su facultad de expedir dichos permisos. Sin embargo, dicha delegación concedida a A.R.P.E. fue disputada en Com. Vec. Pro-Mej., Inc. v. J.P., supra. En este caso, se trataba de una planta dosificadora de asfalto a la cual A.R.P.E. había autorizado un permiso de uso temporero por tres (3) años. En dicha ocasión, A.R.P.E. actuó a tenor con la Resolución JPD-11 de la Junta de Planificación, que le confería autoridad para conceder permisos temporeros en todos los casos de plantas dosificadoras. La parte solicitante no compareció ante la Junta de Planificación a requerir una Consulta de Ubicación, sino que la petición fue presentada directamente ante A.R.P.E.
La reglamentación aplicable, sin embargo, requería que ciertos proyectos industriales, entre éstos, las plantas dosificadoras, fuesen considerados en primera instancia por la Junta de Planificación. En vista de lo anterior, el Tribunal Supremo de Puerto Rico concluyó que la delegación a A.R.P.E. hecha en dicho caso resultaba ilegal por estar expresamente prohibida por el Reglamento de la propia Junta de Planificación.
El Tribunal Supremo, a su vez, expresó lo siguiente:

“[D]e una lectura de las disposiciones legales relacionadas con la delegación defunciones de la Junta a A. R.P.E., se desprende que el legislador no tuvo la intención de autorizar a la Junta a delegar en A.R.P.E. la toma de decisiones relacionadas con las áreas no zonificadas. La Ley Núm. 75, supra, al enumerar las instancias de delegación de una agencia a otra omite hacer referencia a la delegación defunciones en áreas no zonificadas. A través del estatuto, el legislador autoriza la delegación de la consideración de proyectos y enmiendas a los mapas de zonificación sólo en aquellas áreas que han sido previamente zonificadas. ”

Por otro lado, y a la luz de la decisión anterior, el Art. 11, antes citado, fue enmendado mediante la Ley Núm. 129, supra. En su consecuencia, se autorizó expresamente a la Junta de Planificación a delegar en A.R.P. E. la resolución de casos y el poder de tomar determinaciones sobre asuntos en que la Junta de Planificación no se haya reservado jurisdicción exclusiva y que se relacionen con áreas no zonificadas.
La ley autorizó a la Junta de Planificación a elaborar y adoptar dentro del término de noventa (90) días la reglamentación necesaria para definir con precisión el alcance, responsabilidades, limitaciones y condiciones de la delegación otorgada mediante esta Ley. Las facultades y responsabilidades delegadas entrarían en vigor, una *676 vez la reglamentación fuera aprobada por el Secretario de Estado.
A tales efectos, la Junta de Planificación elaboró el “Reglamento para Delegar a la Administración de Reglamentos y Permisos la Adjudicación de Permisos de Usos y Construcción y Desarrollo de Terrenos en Areas No Zonificadas y Para Establecer Criterios para su Evaluación”. En el mismo, se establecieron los criterios mínimos para guiar y controlar el uso y desarrollo de los terrenos en áreas no zonificadas de la Isla con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de sus futuros habitantes. Administración de Reglamentos y Permisos, et als v. Johnny Rivera Morales y/o Johnny Trucking, supra.
El Reglamento delegó en A.R.P.E. la facultad para conceder Permisos de Uso y construcción y el desarrollo de terrenos en áreas zonificadas y no zonificadas, en las que la Junta de Planificación considere que pueden ser atendidas con mayor agilidad y eficiencia por dicha agencia y en aquéllas que no se requiera la implantación de una política pública. Id. Asimismo, todas las determinaciones que A.R.P.E. tome a base de las delegaciones que le han sido autorizadas, deberán ser consistentes con las políticas, normas y reglamentos adoptados por la Junta de Planificación. Id.
IV
Procedamos analizar la controversia ante nos a la luz de la normativa reseñada.
En su escrito, A.R.P.E. nos señala que, conforme al ordenamiento jurídico, le corresponde a ella aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. Arguye que, en el caso de marras, la petición incoada ante el foro de instancia se realiza en virtud del Art. 28 de la Ley Núm. 76, supra, el cual autoriza a A.R.P.E. a solicitar al tribunal, mediante un procedimiento especial sumario, una orden de paralización permanente de un uso o de una construcción que se opera o se realiza sin los permisos correspondientes en violación al citado estatuto. Lo anterior, arguye la agencia, independiente del trámite que tenga que seguir la parte para obtener el Permiso de Uso. Plantea que el Tribunal de Primera Instancia en vez de ordenar la paralización permanente permitió la operación del Centro de Cuido Diurno por entender que había comenzado un proceso de revisión administrativa.
A.R.P.E. entiende que la controversia planteada en el caso de marras es una invocada bajo el Art. 28, supra, limitada a si la parte querellada tiene o no un Permiso de Uso, esto independientemente del trámite que tenga que seguir la parte para obtener el Permiso de Uso. Arguye que ante la carencia del Permiso de Uso correspondía al Tribunal de Primera Instancia ordenar la paralización permanente del uso. A tono con la jurisprudencia del Tribunal Supremo, le asiste la razón a A.R.P.E.
Comencemos señalando que este Panel tuvo ante su consideración el caso Administración de Reglamentos y Permisos, et als v. Johnny Rivera Morales y/o Johnny Trucking, KLAN-2000-00190. En dicho caso, cuya controversia es similar a la de autos determinamos:

“Este Tribunal recientemente resolvió una controversia similar a la de autos (KLCE-02-00405). En dicha Sentencia, señalamos:

La Ley ordena a la Junta elaborar la reglamentación correspondiente para implementar dicha delegación. El Tribunal de Primera Instancia entendió que como este trámite aún no se ha completado, debía paralizarse el caso de autos. No estamos de acuerdo.

Lo cierto es que la Ley Orgánica de A.R.P.E. concede amplia facultad a dicho organismo para presentar 
*677
peticiones de injunction, bajo el procedimiento especial establecido por dicho estatuto. Dicho precepto, según hemos visto, adopta una postura de liberalidad en cuanto a la legitimación para instar acciones de este tipo, concediendo facultad para ello, no sólo a A.R.P.E., sino al Secretario de Justicia, a cualquier propietario y/u ocupante de una propiedad vecina, a los colindantes y vecinos, a los funcionarios designados por los organismos gubernamentales, así como a los ingenieros y arquitectos que actúan como proyectistas o inspectores de una obra. ”

23 L.P.R.A. sec. 72.
Es nuestra opinión que, a partir de la aprobación de la Ley Núm. 76 de 24 de junio de 1975, A.R.P.E. siempre ha gozado de la facultad de aprobar consultas relacionadas a áreas no zonificadas. Aun si ese no fuera el caso, según sugerido por la expresión citada del Tribunal Supremo en Comité de Vecinos Pro Mejoramiento, Inc. v. Junta de Planificación, somos de la opinión que A.R.P.E. goza de la capacidad de instar injunctions para solicitar la prohibición de actividades no autorizadas en áreas no zonificadas.
La concesión de permisos de uso, según nuestro ordenamiento, es materia dentro de la competencia exclusiva de A.R.P.E., 23 L.P.R.A. sec. 71o.
Sería un contrasentido decir que el Secretario de Justicia, los vecinos y colindantes de la propiedad, o los ingenieros y arquitectos gozan de legitimación para instar un injunction en este tipo de casos, pero que A.R.P.E. carece de esta facultad, en un área que le ha sido asignada por ley.
Aunque la facultad de la Junta de delegar a A.R.P.E. aprobaciones de consultas en áreas no zonificadas pueda resultar controversial, su potestad de delegarle funciones en etapas operacionales de proyectos o cuya decisión no requiera implantar o definir una política pública general, no lo es. Creemos que la presentación de una petición de injunction para prohibir a una parte operar un negocio sin el correspondiente permiso de uso pertenece a este último tipo de determinación.
En cualquier caso, la falta de autoridad de A.R.P.E. para instar la acción tampoco constituiría un impedimento para que el Tribunal de Primera Instancia adjudicara la petición presentada. Lo que procedería, en tal circunstancia, sería que el foro recurrido simplemente desestimara la acción.
Por otro lado, en el caso de autos, el recurrido nos señala que A.R.P.E. le autorizó a operar su negocio de alquiler de equipo pesado y camiones. Sin embargo, plantea que nunca se le requirió el estacionamiento en controversia. De hecho, dicho permiso le fue requerido por el Departamento de Salud. Asimismo, nos señala que la Consulta de Ubicación requerida para el estacionamiento fue sometida a A.R.P.E., y luego de ésta declararse sin jurisdicción, se sometió a la Junta de Planificación, la cual está pendiente de aprobación. Arguye que si se paraliza el uso del estacionamiento y mantenimiento de los camiones y equipo de su compañía y luego le aprueban la Consulta de Ubicación, sus perdidas serán irrecobrables.
Al hacer su determinación sobre la concesión de un permiso de un injunction solicitado al amparo del Art. 28, supra, el tribunal deberá considerar el correspondiente balance de intereses en conflicto. A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986).
Al devolverse el asunto al foro de origen, por lo tanto, el Tribunal de Primera Instancia podrá considerar los planteamientos del' recurrido arriba señalados en tomo a la conducta de A.R.P.E. No percibimos fundamentos en derecho, sin embargo, para la determinación del Tribunal de abstenerse de adjudicar la petición y paralizar los procedimientos.
De nuestra determinación, A.R.P.E. acudió al Tribunal Supremo mediante petición de certiorari. Dicho *678 Foro expidió el auto solicitado y revocó nuestra decisión. Señaló, en lo pertinente:
“Además de tener delegada la facultad de conceder y evaluar permisos de uso tanto en áreas no zonificadas como en las que no lo están, la ley habilitadora de ARPE establece unos mecanismos que dicha agencia podrá utilizar para velar por el cumplimiento de las leyes y los reglamentos de planificación. De igual forma, podrá hacer uso de aquellos remedios legales necesarios para velar por el cumplimiento efectivo de sus determinaciones. A.R.P.E. v. Ozores Pérez, supra.

El Artículo 16 déla Ley Núm. 76, supra, dispone que no podrá usarse ningún terreno o edificio, ni ninguna parte de éstos, a menos que el uso sea de conformidad con los reglamentos que para el desarrollo y uso de terrenos, así como para la construcción y uso de edificios que a esos fines hayan sido adoptados o de acuerdo al permiso que haya sido otorgado por A.R.P.E. Dicho artículo consigna la prohibición de usos de terrenos o edificios sin el debido permiso de ARPE.

De haber algún uso en violación a dichas leyes o reglamentos, el Artículo 26 de la ley habilitadora de ARPE le permite a ésta interponer los recursos adecuados en ley para “impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, usado o mantenido en violación a las disposiciones de dicha ley o de cualesquiera de los reglamentos que regulen la construcción y uso de edificios y pertenencias de Puerto Rico ”.

En A.R.P.E. v. Rodríguez, 127 D.P.R. 793 (1991), este Tribunal tuvo la oportunidad de definir el alcance del citado Artículo [28]. En dicha ocasión, concluimos que la razón de ser del Artículo 28 es “hacer viable, a la vez, que vindicar, el cumplimiento de la Ley de A.R.P.E. y la reglamentación correspondiente”. Id. a la pág. 803.
Se señaló además que dicho Artículo [28] faculta al Administrador de ARPE, al Secretario de Justicia o a cualquier propietario u ocupante de una propiedad vecina que resulte perjudicado o pueda resultar perjudicado a obtener de cualquier juez del TPI una orden provisional o permanente paralizando cualquier construcción o uso contrario a las leyes y reglamentos de planificación. Asimismo, concluimos que el mecanismo que provee dicho articulado es uno estatutario, especial y sumario limitado a la obtención de órdenes para la paralización inmediata, provisional o permanente, de usos contrarios a la ley. A.R.P.E. v. Rodríguez, supra, alaspágs. 808-09 (1991.)

Cuando se trate de una petición de injunction autorizado expresamente por dicho estatuto, es importante aclarar que éste no surge de la jurisdicción de equidad de la corte, en virtud del cual el tribunal ordena a una persona bajo apercibimiento de desacato que realice o deje de realizar un acto que infrinja o perjudique el derecho de otro. En esto se diferencia del injunction clásico u ordinario. Tampoco se requiere alegación ni prueba de daños irreparables, y sólo la determinación de que el demandado ha violado las disposiciones de la ley....”.

En fin, el Artículo 28 provee el mecanismo de injunction para hacer cumplir las leyes y reglamentos de planificación. De este modo, al interponerse una petición de injunction al amparo del Artículo 28 de la Ley Núm. 76, supra, éste deberá evaluarse según los criterios establecidos en dicho estatuto. Por tal razón, cualquier persona legitimada para llevar a cabo dicha acción deberá traer a la consideración del tribunal los siguientes dos factores: (1) que exista una ley o reglamento que regula dicho uso o actividad; y (2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. (Enfasis en el *679 original)
Administración de Reglamentos y Permisos, et als v. Johnny Rivera Morales y/o Johnny Trucking, supra, a las págs. 984-985.
Señalado lo anterior en cuanto al alcance del Art. 28, supra, el Tribunal Supremo al aplicarlo a los hechos que dieron génesis a dicho recurso apuntó:

“El TCA procedió a revocar dicha sentencia del TPI y le devolvió el caso para que evaluara en su determinación el balance de intereses en conflictos, luego del recurrido argumentar que si se paralizaba su negocio sus pérdidas serían irrecobrables. Al concluir esto, dicho foro citó como base lo resuelto por este Tribunal enA.R.P.E. v. Ozores, supra. No estamos de acuerdo.

De acuerdo a lo anterior, lo fundamental en el presente caso es determinar si se estaba haciendo un uso ilegal de algún espacio de terreno. En otras palabras, si el negocio Johnny Trucking operaba contrario a lo establecido en los reglamentos de planificación o de uso de terrenos, y de cuyo cumplimiento ARPE tiene la obligación de velar.

Ante los hechos del caso, lo que procedía era que TPI declarara con lugar el recurso de injunction presentado por ARPE debido a que el uso operado era distinto al uso aprobado....Así también, la Junta de Planificación, la cual en ese momento tenía jurisdicción exclusiva para atender la realización de consultas de ubicación y concesión de permisos en áreas no zonificadas, tampoco había autorizado dicho uso.

Por lo tanto, la evaluación que correspondía hacer al TPI, era si el uso de estacionamiento y mantenimiento de vehículos pesados requería el permiso de ARPE o de la Junta de Planificación; y si el mismo se obtuvo o no. Por tales razones, al haberse dado un uso distinto para el cual fue autorizado, debió ordenarse la paralización de las operaciones de dicho negocio.

Id., a la pág. 985.
En el caso de autos, inicialmente A.R.P.E. le expidió un Permiso de Uso el 30 de marzo de 2001 a Real para la actividad del Centro de Cuido Diurno. Burgos instó querella ante la agencia. En la misma, solicitó se revocara el Permiso de Uso concedido arguyendo que A.R.P.E. no tenía jurisdicción para otorgar permisos en áreas no zonificadas. La agencia revocó el Permiso de Uso concedido.
Ante esta situación, y mediando la aprobación de la Ley Núm. 129, supra, Real presentó una nueva solicitud de Permiso de Uso. Posteriormente, se realizó una inspección en la dirección objeto de la querella en donde se encontró el uso en operación sin permiso.
En su consecuencia, el 19 de marzo de 2003, A.R.P.E. instó una Petición ante el Tribunal de Primera Instancia al amparo del Art. 28 de la Ley Núm. 76, supra. Celebrada la correspondiente vista, la agencia solicitó se emitiera una Orden de Paralización Permanente por estar operando el uso en contravención al ordenamiento legal vigente. El tribunal a quo denegó la Orden de Paralización Permanente del Centro de Cuido Diurno.
Es requisito de ley operar cualquier uso con el correspondiente permiso de A.R.P.E. Cuando se realiza una actividad sin tener los permisos requeridos por ley, la agencia puede solicitar la paralización del uso ilegal *680 mediante el recurso de injunction estatuido en el Art. 28, supra. El tribunal deberá evaluar esta Petición a la luz de si existe una ley o reglamento que regula dicho uso y actividad y que la persona señalada se encuentra realizando un uso o actividad en violación a esa ley o reglamento. Administración de Reglamentos y Permisos, et als v. Johnny Rivera Morales y/o Johnny Trucking, supra.
Conforme reseñado, y a la luz de la jurisprudencia del Tribunal Supremo, el Centro de Cuido Diurno en controversia estaba operando sin Permiso de Uso, por lo que el Tribunal de Primera Instancia debía ordenar la paralización.
Y
Por los fundamentos expresados anteriormente, se revoca la Sentencia apelada.
Así lo acordó y manda y lo certifica la señora Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 4
1. Dicho Centro de Cuidado Diurno se encuentra localizado en el Bo. Saltos, Carr. 155, Km. 25, hm 8 de Orocovis.
2. 23 L.P.R.A. see. 62 et seq.
3.23 L.P.R.A. sec. 71 et seq.
4. 23 L.P.R.A. 62o.
5. El Reglamento fue aprobado el 5 de septiembre de 2003.
6. Dicho artículo establece, en lo pertinente:

“El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier otro propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este Capítulo y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (nuisance) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada...

Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra...”.
7. Surge del expediente que el 16 de agosto de 2001, A.R.P.E. le expidió un Permiso de Uso a Burgos, saber el 01PU7-00000-03900, permitiendo la operación del negocio El Rincón Familiar como cafetería. Lo anterior dio lugar a que Brenda Real (familia de Real) presentara una querella contra Burgos conforme la Ley Núm. 140 de 23 de juüo de 1974. En su consecuencia, se dictó una Orden fijando un Estado Provisional de Derecho.
Asimismo, Brenda Real presentó una querella ante A.R.P.E. al amparo del Art. 28 de la Ley Núm. 76, supra. Soücitó *681 a la agencia se declarara nulo el Permiso de Uso concedido a Burgos, toda vez que se alegó que éste operaba una barra-pub y no una cafetería.
A.R.P.E. determinó que ambos permisos eran nulos.