Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSÉ RUIZ LÓPEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | TA2026RA00095 | REVISIÓN JUDICIAL Procedente del DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Resolución de Reconsideración Núm.: ICG-854-2025<br><br>Sobre:<br>Solicitud de Servicio, correspondiente al área Socio Penal |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de abril de 2026.

El 2 de marzo del año en curso, el señor José Ruiz López (señor Ruiz López o recurrente) compareció ante este Tribunal de Apelaciones por medio de este recurso de *Revisión Judicial*, por derecho propio y como indigente.[1] En este, solicitó que intervengamos con la *Resolución* emitida el 3 de febrero de 2026, notificada el día 10, por la División de Remedios Administrativos (en adelante, DRA) del Departamento de Corrección y Rehabilitación (en adelante, DCR o recurrida).[2]

Estudiado el legajo apelativo y los documentos que este contiene, y en consideración al derecho aplicable que adelante expondremos, **confirmamos** la determinación recurrida. Veamos.

---

[1] Mediante Resolución del 9 de marzo de 2026, se ordenó al Departamento de Corrección y Rehabilitación que entregase el Formulario de Indigencia, debidamente juramentado por el recurrente. SUMAC TA, Entradas Núm. 2 y 3.
[2] SUMAC TA, Entrada Núm. 1, Apéndice 2.

## I.

El 29 de octubre de 2025, el señor Ruiz López, quien se encuentra recluido en la Institución Correccional Guerrero de Aguadilla, radicó una *Solicitud de Remedio Administrativo* en la que indicó que requería la terapia de Sección Programa de Evaluación y Asesoramiento (SPEA).[3] Esto, para poder beneficiarse de los pases extendidos, ya que requieren las terapias y programas solicitados.

El 24 de noviembre de 2025, la DRA emitió su *Respuesta del Área Concernida/Superintendente.*[4] En la misma, la Sra. Liciaga, Supervisora Técnico de Servicios Socio Penal, indicó: "Referente a la petición del confinado de recibir las terapias de SPEA, este fue referido el 4 de abril de 2025. Se encuentra en listado de espera".

Inconforme, el 4 de diciembre de 2025, el recurrente presentó *Solicitud de Reconsideración* en la que sostuvo que no está de acuerdo ni conforme con la respuesta emitida a su solicitud de remedios administrativos, ya que la misma no atiende ni resuelve su solicitud.[5] De modo que, solicitó la reconsideración ya que las terapias solicitadas, SPEA, son requisito y obligatorias para poder beneficiarse de los pases iniciales.

El 23 de diciembre de 2025, la DRA acogió la reconsideración del peticionario. Así pues, el 3 de febrero de 2026, notificada el día 10, emitió *Resolución* en la que modificó la respuesta recibida por el área socio penal y así modificada la confirmó. En las conclusiones de derecho allí consignadas, se dispuso como a continuación se transcribe:

> A base de la información relacionada al reclamo del recurrente de la cual solicitó beneficiarse del Programa de SPEA y conforme a la respuesta del área concernida [esta] que suscribe procedió a evaluar la necesidad, la inquietud del recurrente, donde se dialogó con la técnica socio penal a cargo del recurrente, donde la social Wilmary Caro Vendrell, indicó que al recurrente fue visto en comité de clasificación y tratamiento el 14 de abril de 2025, en Asignación Plan Institucional y referido al Programa SPEA, primero [e]l recurrente tiene que beneficiarse de estudios, trabajo si hay la disponibilidad

---

[3] *Íd.*, Apéndice 3, Anejo I, pág. 1. La solicitud lleva el número de ICG-854-2025.
[4] *Íd.*, págs. 2-3.
[5] *Íd.*, Anejo II, pág. 1.

y de los programas, ya que son requisitos meritorios, no obstante por reglamento, para que el recurrente pueda beneficiarse del Programa de Evaluación y Asesoramiento tiene que faltarle un año antes de que cumpla su mínimo de sentencia, su mínimo de sentencia está para el **5 de agosto de 2038**, estamos hablando que para cumplir su mínimo de sentencia le falta aproximadamente 12 años, lo que significa que sí puede ser referido, puede estar en lista de espera, no obstante se le da la oportunidad a otros miembros de la población correccional que estén ceca de cumplir su mínimo de sentencia. Cabe señalar que el recurrente tiene una sentencia alta, ya que su máximo de sentencia esta para el 13 de enero de 2135.
Le recomendamos que lleve un buen Plan Institucional y pueda llevar un buen proceso de rehabilitación.

(Énfasis en el original)

Por las razones consignadas en la porción transcrita, la DRA resolvió confirmar y modificar la respuesta recibida por parte del área socio penal. En desacuerdo aun, el 6 de marzo de 2026, fue recibido el recurso de epígrafe, en donde el señor Ruiz López acudió ante esta Curia y señaló la comisión de dos (2) errores, a saber:

> Erró la Administración de Corrección y Rehabilitación al decir que el 4 de abril de 2025 fue referido nuevamente a las terapias de SPEA.

> Erró la Administración de Corrección y Rehabilitación al decir que para el 5 de agosto del 2038 es que cumplo el mínimo de mi sentencia que sería cuando cualificaría para tomar dichas terapias.

Habiéndosele ordenado a la agencia recurrida presentar su posición, en cumplimiento con nuestro requerimiento, el 14 de abril del año en curso, la Oficina del Procurador General de Puerto Rico, presentó su correspondiente alegato, en representación del DCR.[6] Así, con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

*A.*

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones

---

[6] SUMAC TA, Entrada Núm. 6.

y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[7]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente,

---

[7] 3 LPRA Sec. 9675.

contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua." (énfasis en el original)

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

El Artículo VI, Sección 19, de la Constitución del Estado Libre Asociado de Puerto Rico, establece como política pública el deber del Estado de reglamentar las instituciones penales, para que estas sirvan a sus

propósitos y conduzcan a la rehabilitación moral y social de las personas confinadas en ellas. Con tal propósito, el Departamento de Corrección y Rehabilitación aprobó el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Número 8583 (Reglamento Núm. 8583). El mismo establece, entre otros asuntos, el procedimiento que debe seguir los miembros de la población correccional al solicitar un remedio administrativo. Véase, Regla XII del Reglamento Núm. 8583. Por disposición expresa del discutido reglamento, y en cumplimiento con la Ley Pública Número 96-2476-(H.R.-10) "*Civil Rights of Institutionalized Person Act*", se creó la División de Remedios Administrativos con el objetivo de que funja como el organismo administrativo, en primera instancia, ante el cual toda persona recluida en una institución correccional pueda presentar una solicitud de remedio. Esta, atenderá cualquier queja o agravio que puedan tener los confinados contra el DCR sobre: agresiones físicas, verbales y sexuales; propiedad de confinados, revisiones periódicas a la clasificación; traslados de emergencia; confinados a ser reducidos en el anexo de máxima seguridad, reclusión solitaria, plan de recreación, ejercicios y uso de biblioteca para fines recreativos; servicios médicos y servicios religiosos.[8]

El discutido reglamento dispone las instancias en las que podrá presentarse una solicitud de remedio y cómo se emitirán las respuestas. Así pues, en cuanto a los asuntos que pueden ser atendidos por la División de Remedios Administrativos, la Regla VI del Reglamento Núm. 8583 dispone que tal división tendrá jurisdicción sobre toda solicitud de remedio presentada que trate sobre: actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o su plan institucional; cualquier incidente o reclamación comprendida bajo las disposiciones del reglamento, sobre la

---

[8] Véase Introducción del Reglamento Núm. 8583.

suspensión de privilegios sin celebración de vista alguna y alegaciones de violencia sexual.

Por su parte, la Regla XIII del Reglamento Núm. 8583 establece que el Evaluador, utilizará todos los procedimientos necesarios para obtener toda información requerida para brindar una respuesta adecuada al miembro de la población correccional. Si un miembro de la población correccional estuviera inconforme con la respuesta dada a su solicitud de remedios administrativos, podrá solicitar la revisión mediante reconsideración ante el Coordinador. Esta reconsideración deberá presentarse dentro de los veinte (20) días de haber recibido la notificación de la respuesta. Regla XIV del Reglamento Núm. 8583.

Sobre la respuesta que reciba de tal solicitud de reconsideración, podrá solicitarse revisión judicial ante este Tribunal de Apelaciones dentro de los treinta (30) días calendarios desde el archivo de la notificación de resolución de reconsideración. Regla XV del Reglamento Núm. 8583.

**III.**

Según expusimos en el tracto procesal, en su recurso el señor Ruiz López cuestiona que, al atender su solicitud de remedios administrativos, la DRA se limitó a establecer que ya ha sido referido al Programa SPEA. Así, al discutir el primer error que señala, arguye que, en lugar de así establecerlo en su respuesta, la DRA debió solicitar el estatus de los otros referidos hechos "ya que dichos referidos están ca[y]endo en oídos sordos.". Mientras tanto, y en cuanto a su segundo señalamiento de error, el recurrente afirma que al concluir erróneamente que cumple el mínimo de su sentencia el 5 agosto de 2038, el DCR ignora los demás programas y privilegios de los que puede beneficiarse con la sentencia y ajustes ya cumplidos.

Por su parte, en su comparecencia el DCR afirma que el recurrente no cumple con los requisitos o criterios de los programas a los que hace

alusión. Así pues, primeramente señala que conforme el Artículo VI(6) del *Reglamento para la Concesión de Permisos a los Miembros de la Población Correccional para Salir de las Instituciones Correccionales del Gobierno de Puerto Rico,* Reglamento 9499 del 19 de septiembre de 2023 (Reglamento 9499), para beneficiarse de alguno de los permisos que concede el citado reglamento deberá evaluarse si el miembro de la población correccional cumplió con todas las terapias de drogas/alcohol (trastornos adictivos), control de impulsos (Aprendiendo a Vivir sin Violencia y el SPEA.[9]

Luego de esto, el DCR, indica que los miembros de la población correccional bajo custodia mediana que aspiren a participar de actividades interinstitucionales y en la libre comunidad, deben completar el certificado de reeducación y readiestramiento del Programa Aprendiendo a Vivir sin Violencia de la SPEA.[10] Similar requisito establece el DCR deben cumplir los miembros de la población correccional que interesen beneficiarse del Programa de Desvío, quienes deberán haberse beneficiado del Programa Aprendiendo a Vivir sin Violencia y contar con la recomendación favorable del terapista/psicólogo que ofreció el tratamiento. Ello, según el Artículo VI(16) del *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 del DCR del 9 de agosto de 2023.[11]

Por último, el DCR señala que el recurrente tampoco cualifica para acogerse al proyecto de pre-reinserción a la libre comunidad establecido mediante la Orden Administrativa DCR-2023-03. Esto, debido a que conforme a la sección IV(A)(7) de esta, entre otras cosas, el señor Ruiz López

---

[9] Los permisos que el Reglamento 9499 permite conceder son: permisos para visitar para visitar condicionalmente sus hogares o los de algún familiar o relacionado, permiso para recibir adiestramiento académico o vocacional en la comunidad, y permiso para salir a la comunidad a trabajar devengando compensación. Véase, Artículo VIII(A)(1), (B)(2)(a) y (C)(2)(a) del aludido reglamento.

[10] Así, cita el Artículo VII(B)(2)(c)(iv) del *Reglamento de Actividades y Nuevas Oportunidades de Rehabilitación y Tratamiento* del 11 de septiembre de 2023, Reglamento Número 9497.

[11] En cuanto a este particular programa, es meritorio destacar que conforme el citado artículo dispone, los miembros de la población correccional que cumplan sentencia por asesinato en primer grado están excluidos de participar del Programa de Desvío. Según surge del Anejo III del Apéndice del legajo apelativo, el recurrente cumple sentencia precisamente por asesinato en primer grado. Por tanto, por disposición reglamentaria, queda excluido de beneficiarse de este programa.

deberá estará a diez (10) años o menos de cumplir el mínimo de su sentencia; más en su caso, faltan 12 años para ello. De este modo, y toda vez que el recurrente aun no cualifica para completar el Programa de Aprendiendo a Vivir sin Violencia de la SPEA, ya que este exige que el candidato esté a un (1) año de cumplir el mínimo de su sentencia, el DCR afirma que la respuesta emitida por la DRA fue adecuada. De igual forma, arguye que la misma se conforma a la normativa aplicable y las constancias del expediente administrativo, por lo que debe ser confirmada.

Con el fin de disponer de este primer señalamiento de error, hemos estudiados las distintas disposiciones reglamentarias citadas por el DCR. Al así hacerlo, advertimos que, efectivamente, las terapias de Aprendiendo a Vivir sin Violencia de la SPEA son un requisito para los pases temporeros que el recurrente desea disfrutar. Igualmente, reconocemos que, aunque fue referido para a la SPEA, por virtud de la sección sobre criterios de selección del Manual de Normas y Procedimientos del Programa Aprendiendo a Vivir sin Violencia, no será hasta que el señor Ruiz López esté a un (1) año de cumplir el mínimo de sentencia que podrá beneficiarse de tal terapia. Siendo ello así, concluimos que la decisión recurrida descansó en una interpretación y aplicación adecuada de las disposiciones reglamentarias aplicables. La actuación del DCR no es irrazonable, arbitraria ni ilegal, por lo que resolvemos sostenerla.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** la *Resolución* emitida el 3 de febrero de 2026, notificada el día 10, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación.

Notifíquese al señor José Ruiz López quien se encuentra bajo custodia del Departamento de Corrección y Rehabilitación: Institución

Correccional Guerrero de Aguadilla, PR 00603 o en cualquier institución en donde se encuentre.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones